JOHN M. KELLEY, PETITIONER.

Suffolk.   November 25, 1889. — October 25, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Parent and Child — Custody of Child — Commitment to State Board of Lunacy and Charity.*

The parent of a neglected child duly committed to the custody of the State Board of Lunacy and Charity under the St. of 1882, c. 181, § 3, as amended by the St. of 1886, c. 330, is not concluded by such adjudication during the term of the commitment, but may show at any time, upon a petition for a writ of habeas corpus to obtain the custody of the child, that the object of the commitment has been accomplished, and that the child may properly be restored to his custody. (DEVENS, HOLMES, and KNOWLTON, JJ., dissenting.)

PETITION, filed September 6, 1889, for a writ of habeas corpus to the State Board of Lunacy and Charity. The petition alleged that three minor children of the petitioner were restrained of their liberty by such board, by virtue of a warrant issued by the Superior Court; that any cause for depriving him of the care, society, and assistance of such minor children, which existed at the date named in such warrant, had ceased to exist; that he was now able to give them full and proper support, and was competent and fit to have the care and education of such children; and that their welfare would permit their restoration to him and their removal from their present custody. The warrant, which was annexed to the petition, recited that the Superior Court, on November 2, 1888, after due notice to the petitioner and his appearance and a full hearing, ordered that such children, " who, by reason of the neglect of their parents, were growing up without education or salutary control and in circumstances exposing them to lead an idle and dissolute life, . . . be committed to the custody of the State Board of Lunacy and Charity," without more. The answer recited that such children were subject to the control of the board until they became of age, unless in its judgment " the object of such commitment has become accomplished "; and that the judgment of the board, which it was advised was conclusive, was that such object had not been accomplished. The case was heard by *Devens*, J., who ruled, as matter of law, that the petitioner was not entitled to the writ, and could not offer evidence to prove the allegations of his petition, and reported the case for the consideration of the full court.

The case was argued at the bar in November, 1889, and afterwards was submitted, on the briefs, to all the judges.

*J. Smith*, for the petitioner.

*H. C. Bliss*, First Assistant Attorney General, (*A. J. Waterman*, Attorney General, with him,) for the Commonwealth.

W. ALLEN, J. The St. of 1882, c. 181, § 3, under which the commitment was made, was construed in *Farnham* v. *Pierce*, 141 Mass. 203, which was a case in all material facts like the case at bar. The statute was intended to provide proper custody for children under fourteen years of age, who, from the neglect of their parents, or for other causes named, were in need of proper

parental care. It was not intended to change the status of the child, or to adjudicate upon the right of the parent to its custody. The custodian was authorized to discharge the child from custody when the object of its commitment should be accomplished, and until then the parent lost the custody of his child, but the right of the parent revived when the cause of the commitment ceased to exist. The fact that the child was found to be suffering from want of proper care and restraint from the neglect or unfitness of its parent, authorized its commitment to proper custody, and took the custody from the parent while such neglect or unfitness continued and the good of the child prevented its return to the custody of its parents. One reason given for this construction of the statute was, that it made no provision for notice of the proceedings to the parent, and gave him no right to be heard in the matter. The St. of 1886, c. 330, amended the St. of 1882, c. 181, by requiring that the proceedings should be upon complaint, and that notice and an opportunity to be heard should be given to parents.

In the case at bar, the petitioner was notified, appeared, and was fully heard. The respondent contends that this amendment has the effect to make the commitment an adjudication conclusive against the parent's right to the custody of the child, as against the persons to whom its custody is committed, during the whole of the time named in the commitment. The amendment does not in terms change the meaning of the original statute, and deprive a parent of any right which he had under that. Its effect is to protect the rights of the parent so far as to give him a right to be heard before his child is taken from his custody. It should not be extended to deprive him of rights by implication, unless the intention to do so is clearly manifested. The immediate effect and apparent intent of the amendment are to give a right to a parent to be heard upon the matter of the commitment. The argument is, that the amendment shows the intention to extend the scope of the decree, and to make it binding on the parent in a respect in which it was not before binding. But this is not necessarily nor plainly the intention manifested. It may have seemed to the Legislature proper that a parent should have a right to be heard before his children were taken from him upon an adjudication that they were suf-

fering from his wrong or misfortune, even if they could be restored to him when he could show that the object for which he was deprived of their custody was accomplished.

But the decisive answer to the contention is, that neither the object nor the terms of the commitment were changed by the amendment. The commitment might be until majority, or for any less time, or until the purpose of the commitment was accomplished. The authority to the custodian to discharge a child when the object for which it was committed to his custody was accomplished, limited his right and prescribed his duty. Whatever may be the authority of the Legislature to take a child from the custody of its parents, it may be assumed that it will not deprive a parent of his child without cause, whether by taking a child from its parent for no object, or by withholding it after the object for which it may have been taken shall have been accomplished. The statute recognizes the fact that the object of the commitment is such that it may be accomplished before the time of the commitment has expired, and it authorizes the discharge of the child when the reason for the custody no longer exists. It is improbable that the amendment to the statute should intend that by the adjudication the parent should forfeit all right to the child during the time mentioned in the commitment. A parent who has neglected his child may become competent, and may desire to furnish a better home and parental care and influences to his child than can be furnished by the custodian, and the good of the child may require that it should be restored to its parent. In that case, the purpose of the commitment would be accomplished, and the custodians would have authority to discharge the child from their custody. If they should do so, it would hardly be contended that the adjudication would deprive the father of the right to his child. If he has a right to the custody of the child when it is discharged from custody, he has a right to require that it shall be discharged when the object of the commitment has been accomplished. The statute does not give a discretion to the custodian to discharge the child. It gives him an authority conditioned upon a fact, and does not give him judicial jurisdiction to determine the fact. If the fact exists, the authority exists, and the father has an interest in and a right to require its exercise.

The statute, as depriving a parent of the custody of his child, must be construed to intend either that the child shall be committed to the designated custody until the condition of its parent is such that his child can properly and consistently with its own good be restored to him, or as providing for an adjudication by the magistrate depriving the parent of the custody of the child during the time named in the commitment. The former was the construction given to the original statute, and we do not think that its meaning was changed in this respect by the amendment.

We need not decide whether, if the commitment was intended to operate as a decree depriving the father of the right to his child, he could avail himself in this proceeding of its defects in not showing any adjudication that he had neglected his children, and in not fixing the time during which his right should be declared to be forfeited. We think that the commitment must be construed as committing the children to the custody of the respondent until they should respectively become twenty-one years of age, or the object of their commitment should be accomplished, and that the facts which the petitioner alleges are sufficient to show that that object has been accomplished. If the petition is defective in not alleging that he had offered to show those facts to the respondent, and demanded the release of his children, the defect is supplied by the answer.

In the opinion of a majority of the court, the petitioner has a right to be heard. The case must be remitted for further hearing before a single justice.    *Ordered accordingly.*

KNOWLTON, J. I think it proper to present my view of this case, which differs from that of the majority of the court.

Chapter 181 of the Sts. of 1882 was considered in *Farnham* v. *Pierce*, 141 Mass. 203, and it was held to be, not a penal statute, but a provision by the Commonwealth as *parens patriæ* for the custody and care of neglected children. The question principally discussed was whether the commitment was binding upon the father of the child, and it was decided that it was not. But the power of the Legislature to authorize a proceeding to determine the fact of a father's unfitness, and consequent forfeiture of his parental rights, and thereupon to commit his child to the custody of others for such a term and in such a manner

as the interest of the child might require, is assumed in the opinion. The reasons why the statute should not be deemed binding upon the father as an adjudication of his rights are pointed out. It is shown that there is no provision in it for notice to the parent, or for making him a party, or for giving him a right to be heard if present. It is said that no complaint or written application to the magistrate is required, nor any trial, but that the facts to be found may be " made to appear " by inspection of the child and his surroundings, without any other proceedings, and that the questions involved are left to the summary determination of any magistrate, without revision or appeal. The reasons stated showed conclusively that a parent could not be bound by a proceeding under that statute. It is quite obvious that a law of this kind which did not provide for a determination of the parent's rights could be of but little practical value, and it is not strange that, as soon as it could well be done after the announcement of this decision, the Legislature, which was then in session, passed the St. of 1886, c. 330, to cure the defects which had been pointed out. This act provides that the commitment shall be only " after due complaint setting forth the facts relied upon and a hearing thereon." It directs the issuing of a summons requiring the person to whom the summons is directed to appear and show cause, if any there be, why the child should not be committed in accordance with the provisions of the St. of 1882, c. 181, § 3. This summons is to be directed to the father of the child if living and residing within the Commonwealth, and if not, then to the mother of the child if living and residing within the Commonwealth; if there be no parent living and resident here, the summons is to be directed to the legal guardian of the child if there be one, and if not, then to the person with whom, according to the statement of the child, such child resides. If there be no such person, the court or magistrate is to appoint some suitable person to act in behalf of such child. Notice of the hearing is also required to be sent to the State Board of Lunacy and Charity. The child, parent, guardian, or person appearing in behalf of such child, and the State Board of Lunacy and Charity, are given a right of appeal from the finding of the court or magistrate to the Superior Court of the county within which the hearing is had. Everything which was

said in the opinion of the court to be wanting in the St. of 1882, c. 181, to make it binding upon the parent, is provided by the St. of 1886, c. 330 ; and it is difficult to see what more the Legislature could have done to indicate its purpose to authorize a trial which might bind the parent and fix the status of the child as one whose parent had forfeited his right of custody, and who needed the fostering care of the Commonwealth.

The statute authorizes a commitment to the overseers of the poor of the city or town, or to the State Board of Lunacy and Charity, until the child arrives at the age of twenty-one years, or for any less time. I think the Legislature has clearly expressed its intention to provide that the rights of the parent should be concluded for such time as the court or magistrate should determine in making the commitment.

When a parent is unable to perform the duties of custodian of his children, and the interests of the children require the intervention of the State, there can be no doubt of the right of the State to take them into custody, and to adopt measures for their care and protection for any reasonable time not extending beyond their minority. A parent has no such absolute right to his children that, when they have lawfully passed out of his custody into that of the State by reason of his fault or misfortune, he can insist upon having them immediately restored to him if at any time he becomes able to take care of them. A minor child who, or either of whose parents, is chargeable to a town as having a lawful settlement therein, or is supported there at the expense of the Commonwealth, may be bound as an apprentice by the overseers of the poor, a female to the age of eighteen years or to the time of her marriage within that age, and a male to the age of twenty-one years. Pub. Sts. c. 149, § 4. This right of the authorities to retain control of an apprenticed child until he arrives at the age of twenty-one years is not affected by the possibility that his father may soon become of ample ability to support him. Similar provisions of law have been in existence from the earliest times; they have often been approved by the courts, and, so far as we are aware, have never been questioned. *Bardwell* v. *Purrington*, 107 Mass. 419.

Under the statute before us, the court is called upon to consider whether the parent has forfeited his right to the custody

of his child, and, if its finding is in the affirmative, to determine whether the interests of the child require a commitment which shall hold that right forfeited until the child arrives at the age of twenty-one years, or for some less time. Whatever time is fixed, there is a final adjudication of the court upon the right of the parent for that time. Although the parent during that period has no legal right as against the judgment of the court and against the authorities to whom the child is committed, the statute wisely permits the authorities to discharge the child within the time, whenever they think the object of the commitment has been accomplished.

If it is not held that the adjudication is binding upon the parent for the time named in the commitment, the elaborate proceedings have no conclusive effect beyond the day on which they end. The parent can bring his writ of habeas corpus the next day, or the next week, and, if unsuccessful, as often as he pleases thereafter, and compel the court to try the question whether the object of the commitment has not been accomplished. I am of opinion that the Legislature intended to prevent the possibility of such annoyance of the courts and of the officers in charge of public charities, by requiring in the first instance that the proceedings shall be upon a complaint in due form, that there shall be a regular hearing, that the parent shall be notified if within the Commonwealth, that at all events some one shall be before the court to represent the child, that the State Board of Lunacy and Charity shall also be notified of the hearing, that each party notified shall have a right of appeal, and that the court shall determine the duration of the commitment.

In the present case, the commitment was in general terms to the custody of the State Board of Lunacy and Charity, without express statement as to the time. It has not been argued that on this account the commitment was invalid, but it has been assumed on both sides, and we think correctly, that this was a commitment until the children shall respectively arrive at the age of twenty-one years. The statute says that the commitment shall be until the child "arrives at the age of twenty-one years, or for any less time." The court having found that a commitment was necessary, and having ordered a commitment without naming any less time, it must be taken to have been for the

term named in the statute. I am of opinion that the petition should be dismissed.

I am authorized to say that Mr. Justice Devens and Mr. Justice Holmes concur in this opinion.