[No. 464.   Decided January 21, 1892.]

*In the Matter of the Application of* FRANK MASON *for a Writ of Habeas Corpus.*

CRIME COMMITTED BY CHILD—SENTENCE TO REFORM SCHOOL—INCORRIGI-
BILITY—RETURN TO COURT ORDERING COMMITMENT.

Under Laws 1889–90, p. 276, § 17, and Laws 1891, p. 195, § 1, a child sixteen years of age, who, upon conviction of robbery, has been committed to the state reform school, and has been found incorrigible and returned to the court which committed him, but

sent back by the court to the school whence he was taken and confined in the jail of the county where the school is located, is entitled to be discharged therefrom on *habeas corpus*, but he should be re-delivered to the trustees of the school; and, *semble*, that the trustees should return him to the court for sentence under the judgment of conviction for robbery.

*Original Application for Habeas Corpus.*

*J. Greathouse*, and *W. W. Langhorne*, for petitioner.

*James A. Haight*, for respondent.

The opinion of the court was delivered by

Stiles, J.—The petitioner alleges that he is confined in the county jail of Lewis county, in the custody of the sheriff, by order of the trustees of the state reform school. He is a boy about sixteen years of age, who was convicted in the superior court of Walla Walla county in September, 1891, of the crime of robbery, and committed to the reform school.   On the 8th of December, 1891, the trustees of the school, after investigation of charges made against him, found him to be incorrigible, unmanageable and detrimental to the interests of the school, and ordered him returned to the superior court of Walla Walla.   Upon his return to Walla Walla, and while he was still in the custody of a deputy sheriff of Lewis county, a proceeding in *habeas corpus* was instituted in his behalf in the superior court of Walla Walla County, and after hearing thereon, he was again ordered to the reform school, on the ground that the trustees had no authority to return him to the superior court whence he came.   Arriving at Chehalis upon this re-commitment, the trustees reiterate his unfitness to be an inmate of their institution, and, probably because they can think of nothing else to do with him, order the sheriff of Lewis county to take charge of him. By this proceeding the petitioner seeks to be disposed of finally.

Upon the argument of the case we were furnished with a copy of the opinion of the learned judge who presides in the superior court of Walla Walla county, upon the proceeding before him, and have given it due consideration; but we are unable to agree with its conclusions.    The substance of the opinion was that § 17 of the act of 1890 (p. 276), under which the trustees were given power to return an incorrigible youth to the court whence he was committed, was necessarily repealed by § 7 of the act of 1891 (p. 197). This ruling was based upon the argument that a person adjudged to be confined in a penal institution can be legally discharged therefrom before the termination of his commitment in but two ways, viz.: By vacating the order authorizing his commitment (which, we remark, can only be upon appeal), or by pardon; the first being vested in the courts, and the second in the governor.    The opinion then proceeds:

"I reach the conclusion then, that if the clause under which the trustees claim to be acting means no more than appears on the face of it, and does not provide what shall be done with the boy when he has been brought back to the court, it is inoperative, and void for uncertainty.    But if, carried to its legitimate effect, it would operate to sever the pupil's connection with the reform school, it is unconstitutional, as infringing upon the prerogatives of the executive and judicial branches of the government (Constitution, art. 3, § 9; art. 4, § 1).    If its practical effect would be to send a child from a reform school to the penitentiary, it is not only against public policy, as placing too much power in the hands of mere ministerial officers, but unconstitutional, as depriving a citizen of a substantial right without due process of law.    In any event it is inconsistent with the first, second and seventh sections of the law of 1891; and consequently void.

"It appears from the record in the case, that the petitioner was ordered by a court of competent jurisdiction to 'be sent to the state reform school, there to remain until he shall be eighteen years, unless sooner paroled, or legally

discharged;' that he was sent to said school; that he is not eighteen years of age; that he has not been paroled or legally discharged; and that said order has not been vacated. It follows, as clearly as by a mathematical demonstration, that the petitioner belongs to the reform school."

The legislative acts sought to be construed are, it is evident, faulty and indefinite, being wanting in much that should be contained in clear and explicit provisions; but we do not think that they are open to the constitutional objections suggested. In the first place, the reform school is not in any sense a penal institution or a prison, but a *school.* Three classes of infants may be committed there: (1) Those who have neither homes nor friends—vagrants; (2) those who have homes and friends, but are unmanageable there; (3) those who have been convicted of offenses against the laws of the state less than murder or manslaughter. Those in the first two classes have committed no legal offense, but the state, in the absense or inability of friends to control and care for them, charitably takes them into its own charge, and proceeds to educate them in all the branches taught in the public schools of the state, as well as in morals, temperance, frugality and industry. They are not subject to the penal laws of the state, have no right to trial by jury (*Ex parte Crouse,* 4 Whart. 1), and do not come within pardoning power, any more than persons committed to the insane asylums. They are wards of the state, which stands to them *in loco parentis,* and whose courts are its agents to make commitments, after which the trustees take full charge and control of them until their arrival at the age of eighteen years, or it is determined that their presence is demoralizing and injurious to the school.

Now, until the establishment of this institution, an infant under the age of sixteen years, if convicted of crime, was, by law, sentenced to imprisonment in the jail or peni-

tentiary, the same as an adult; and he still may be so sentenced, since these acts place the disposal of such persons entirely in the discretion of the courts of record. Once committed to the reform school, these unfortunates are to be treated in exactly the same way as their fellows who have nothing more against them than that misfortune has robbed them of home and friends, or that their childish willfulness has made them insubordinate to just and proper restraint. They are not sent to the school for punishment, but for education, the theory of the state being that, as to them and society, it is better they be taught not to do wrong in the future than that they be punished for the wrong committed in the past. But that the school may be a place of order and obedience to reasonable rules, it is plainly necessary that children who are so vicious as to be detrimental to its best interests should not remain in it; and so the legislature provided that the trustees should be the judges of this fact, as they are certainly the most competent to decide it. In this we see no conflict with the power or prerogatives of the courts. The commitments are all upon condition that the subjects of them shall turn out to be fit persons for the precincts of the school as a school not as a prison. The incorrigible of the first and second classes goes back to the court whence he came, and is discharged; but he of the third class, not having arrived at the age of eighteen years, has not earned the immunity provided by the last clause of § 7 of the act of 1891, and goes back for sentence under his conviction.

In reaching this conclusion it would be much more satisfactory if § 1 of the act of 1891, instead of providing that the court might, "instead of entering judgment order to the reform school," had said what we think was meant, viz., that the court might suspend sentence and commit the offender during good behavior to the reform school; but reading all parts of the two acts together, this seems

to be the meaning.   Otherwise there could be no possible
way of relieving the school of a disturber of this kind.
The trustees could not do it, since they have but one au-
thority in the matter, viz., to return to the court whence
he came, or to discharge at eighteen years, unless there is
something else hidden in the terms "paroled" and "legally
discharged" in § 7, and the court could do nothing, since
there is no provision of law by which the superior courts,
in such cases, can recall their action.   Moreover, the lan-
guage of § 7 points strongly toward the conclusion we have
reached.   It says:

"The discharge of any boy or girl having arrived at the
age of eighteen years shall be a complete release from all
penalties incurred by conviction of the offense for which
she or he was committed."

*Per contra*, a discharge before eighteen years does not
have that effect.   To send back to the superior court
would, in a sense, be a discharge, and it seems to be the
only discharge provided for in the acts, except the final
one occurring as a matter of course when eighteen years
is reached.   In the statute concerning insane persons we
find provisions whereby the superintendents of the hos-
pitals are given the authority to decide when a person who,
upon arraignment or after conviction has been found to be
insane, shall be returned to the custody of the court or the
warden of the penitentiary, respectively.   There is no rea-
son why a like authority should not be vested in the trus-
tees of the reform school.

The sheriff of Lewis county, of course, has no legal
possession of the petitioner, who must be discharged there-
from.   But he may re-deliver him to the trustees of the
state reform school, who will, doubtless, proceed in accord-
ance with this opinion.

ANDERS, C. J., and HOYT, DUNBAR and SCOTT, JJ.,
concur.