(May 20, 1907.)

## In the Matter of the Estate of DAVID H. McVAY, Deceased.

[93 Pac. 28.]

ESTATE OF DECEASED PERSON—SETTING APART HOMESTEAD AND EXEMPT PROPERTY TO WIDOW—MONEY DEPOSITED IN LIEU OF UNDERTAKING ON APPEAL—AGREEMENT OF SEPARATION BETWEEN HUSBAND AND WIFE—SPECIAL FINDINGS OF JURY.

1. Under the facts of this case, *held*, that where a widow makes application to have a homestead set apart out of the real estate belonging to the estate of her deceased husband, and the probate court refuses to grant the petition and an appeal is taken to the district court where a demurrer is interposed to the petition on the ground that it does not state facts sufficient to entitle her to a homestead, and the court sustains such demurrer and permits the petitioner to amend her petition, where it appears that the petition was sufficient without any amendment, the cause will not be reversed on the ground of the error of the court in permitting an amendment.

2. As both parties proceeded upon the theory that the district court might try this matter *de novo*, it is not necessary for us to decide whether on such appeals the district court may try the case anew.

3. Under the provisions of sec. 4778, Rev. Stat., a deposit of money equal to the amount of the required undertaking may be received in the place of the undertaking on appeal.

4. Under the facts of this case, *held*, that the separation of the husband and wife was not permanent and was caused by his cruel and inhuman treatment, and that such separation was not voluntary and not intended by her to be permanent.

5. Under the provisions of sec. 4231, Rev. Stat., the court in every stage of an action must disregard any error or defect in the proceedings which does not affect the substantial rights of the parties.

6. *Held*, that the real estate referred to at the time of the decedent's death could have been selected for a homestead under the laws of this state by either himself or his wife.

(Syllabus by the court.)

APPEAL from the District Court of Fremont County. Hon. J. M. Stevens, Judge.

Appeal from the district court, on an appeal from the probate court, on the petition of the widow, to have set aside

to her the homestead out of the real estate of her deceased husband. Petition granted. *Affirmed.*

Caleb Jones, for Appellant.

Sec. 20 of art. 5 of the constitution gives only to the district court original jurisdiction in all cases of law and equity, but does not give the district court original jurisdiction in matters of probate. Sec. 21, of art. 5, of the constitution has made probate courts courts of record, and has conferred on them original jurisdiction in matters probate, and in the settlement of estates of deceased persons and the appointment of guardians.

If all the facts were taken as absolutely true in the petition, those facts would not have entitled petitioner to a homestead under the provisions of secs. 5440 and 5441, Rev. Stat. It is not even stated or alleged that Americus J. McVay, or her deceased husband, were residents of the state of Idaho. It does not show that they were in possession or that they were residing on the property (Waple's Homestead and Exemption, 1893 ed., pp. 175, 176), nor does it show she was a member of the family of the said decedent, as required by the statutes, nor does it show or give an estimate of the cash value of said property, nor does it show that they were residing on the property or even had possession or control of it.

The petition did not show jurisdiction in the district court to set aside a homestead as prayed for in that petition. Further, the district court has no jurisdiction to try the matter involved in the appeal from the probate court because of respondent's failure to file requisite undertakings or make the requisite *number* of deposits in lieu of the undertakings. These rules of construction would seem to apply with added force to deposits in lieu of undertakings. *Which of these appeals was the deposit made for?*

Soule & Soule, for Respondents.

It is the duty of the probate court, "on his own motion or on petition therefor," to set apart a homestead to the sur-

·viving widow. (Rev. Stats. 1887, sec. 5441; Cal. Code Civ. Proc., sec. 1465.)

The word "may" in this statute means "shall." The probate court has no discretion in this matter. (*In re Estate of Ballentine*, 45 Cal. 696.)

The appeal being on questions of both law and fact, this .action is to be tried anew in the district court. (Rev. Stats. 1887, sec. 4840.)

The court has the same power to grant relief, by amendment and otherwise, as in actions commenced in the district court. (Rev. Stats. 1887, sec. 4841; *Smith v. Gill*, 37 Minn. 455, 35 N. W. 178.)

When the petitioner had properly filed and served her ·notice of appeal, and deposited the money, she had perfected .her appeal, as she had done all the law required of her.

It would seem from the statute that the money is not to be ·transmitted to the clerk of the district court with the record, but held by the probate court as was done in this case. (Rev. Stats. 1887, sec. 4778.) There is no law in Idaho which required the respondent to file any petition at all. She could .make her application orally if she saw fit.

Since the law does not require a petition in writing, the .court cannot require one. For this reason there is no jurisdictional question involved on the petition one way or another, and the rulings of the district court in relation to the respondent's petition, or any other rulings that the trial .court might have made, are immaterial.


SULLIVAN, J.—This is an appeal from the judgment of the district court setting aside certain real estate and personal property to Americus J. McVay, widow of David H. McVay, deceased, and holding that said property is community property of the said McVays, it having been acquired . by them during the existence of their marriage.

It appears from the record that the said McVays were .married at Edgemont, South Dakota, in 1897, and soon after .came to Idaho. On the 21st of July, 1898, they settled upon

the land in controversy, which at that time was unsurveyed public land. Mrs. McVay at that time paid one George Summers $205 from her separate estate for his squatter's right to said land. Thereafter, David H. McVay entered said land under the desert and homestead laws of the United States, and by reason of such entries acquired title to said land from the United States while he and his said wife were residing upon said land.

The record shows that Mrs. McVay resided upon said land with the deceased until she was compelled by his cruel treatment toward her to leave his home and reside elsewhere. It appears from the record that the McVays entered into some kind of an arrangement on or about November 9, 1904, whereby he was to furnish her $1,500, and she was to go away; that sometime in November she left her home and went to the state of Missouri; and thereafter returned to Colorado and came back to Idaho in 1905. It appears that in March, 1905, McVay leased the land and personal property in question to one Oleson. Oleson took possession thereof, and McVay resided there with him, until about the middle of May, when he became sick and went to St. Anthony, the county seat of the county in which said land was situated. He remained there some weeks, and was finally taken to St. Mark's Hospital, in Salt Lake City, Utah, where he died on the 13th or 14th day of July, 1905. His remains were brought back to Fremont county, Idaho, and buried there.

It appears that on the 13th day of June, 1905, the said David M. McVay executed his last will and testament, bequeathing to said Levi Oleson all of his property, both real and personal, which will and testament was filed in the probate court of Fremont county, on the 20th day of July, 1905, and the time fixed for hearing the petition for admitting said will to probate. At the time fixed, at the request of the attorney for the petitioner, the matter was postponed until the 11th day of September, 1905. It seems that a contest had been filed prior thereto, but the will was admitted to probate on the 15th day of September, 1905. Thereafter,

on the 17th day of October, 1905, the widow presented her petition, praying that the court select, designate, and set apart a homestead out of the real property of the deceased for her exclusive use and benefit, which matter was presented to the court and taken under advisement, and was thereafter denied by the court. Thereafter an appeal was taken to the district court from said order refusing to set apart a home- stead to the said widow, and also from an order refusing to set apart the exempt personal property to said widow. Thereafter the executor demurred to the petition of the widow on the ground that her petition did not state facts sufficient to entitle her to a homestead or to the relief demanded or to any relief whatever, and that said petition did not state facts suffi- cient to give the court jurisdiction to select, designate or set apart or cause to be recorded a homestead out of the prop- erty of the estate of said decedent. On the 7th day of June, 1906, the court sustained said demurrer, and over the objec- tion of the attorneys for the executor, permitted counsel to amend said petition, and on the following day the matter came on regularly for hearing, and a jury of twelve men was impaneled to render an advisory verdict to the court. Counsel for the executor thereupon moved that the appeal be dismissed on the ground that no undertaking had been filed or deposit made, which motion was denied. Thereafter a number of witnesses were sworn and testified, and certain document- ary evidence introduced.

The following interrogatories were submitted to the jury for their answers, and the answer to each interrogatory im- mediately follows it, to wit:

"Q. Did David H. McVay give his consent and approval to his wife's going away from their home in Fremont county, Idaho? A. Yes.

"Q. Was Americus J. McVay, on account of her husband's cruel treatment toward her, compelled to abandon her home with him? A. Yes.

"Q. Was the absence of Americus J. McVay from her home with her husband enforced by his cruel treatment of her? A. Yes.

"Q. Where did Americus J. McVay reside at the time of and immediately prior to the death of David H. McVay? A. In Colorado.

"Q. If there was a division of the property, was it made with a view to a permanent separation? A. No.

"Q. Did David H. McVay and Americus J. McVay agree to separate as husband and wife and live apart? A. Yes, by fear.

"Q. If you find that they did so separate, was such separation mutually intended to be permanent? A. No.

"Q. If you find that they did so separate, was such separation voluntary? A. No.

"Q. If you find that they did so separate, did they thereafter look to one another for aid and support? A. Yes.

"Q. If you find that they separated, did they thereafter conduct their business entirely independent of one another? A. Yes, for the time being.

"Q. At the time of his death, did David H. McVay reside upon the premises in question? A. He was away temporarily from home.

"Q. Did David H. McVay, before his death, leave said premises with the intention of taking up his residence elsewhere? A. No."

The court thereafter made its findings of fact and conclusions of law, and entered judgment setting apart all of the real estate and personal property to the widow. The appeal is from that judgment.

A number of errors are assigned and a reversal of the judgment is asked. The first and second errors relate to the action of the district court in permitting the petitioner to amend her petition to set apart a homestead, and making such amendment by a paster slip attached to the original petition. We are not advised as to just what such amendment was, although we have two papers in the transcript, one entitled "Petition to Set Apart Homestead," and the other entitled, "Amended Petition to Set Apart Homestead," but the provisions of the amendment are not set forth. In our view of the matter, either the petition or the amended peti-

tion was sufficient to warrant the court in passing upon the question whether a homestead should be set apart to the widow or not.

The record shows that the application of the widow to have a homestead set apart was contested and considerable evidence was introduced pro and con. Before proceeding further, however, we will say that as no amendment was required to give the court jurisdiction to act on said petition, the amendment did not affect it one way or the other. As both parties proceeded upon the theory that the district court might try said matter anew, or *de novo*, we shall proceed upon that theory without deciding whether on such appeals the district court may try the case anew.

A motion to dismiss the appeal on the ground that no undertaking had been filed on the appeal from the probate to the district court was made by counsel for the executor, which was resisted by the petitioner. It appears that the petitioner, instead of filing an appeal bond on the appeal from the probate court, to the district court, had deposited the required amount of cash with the probate judge, and in the record sent up to the district court that fact was not shown, but was made to appear on the hearing of the motion. There was no error in the action of the court in denying such motion, as a deposit of money is authorized by the provisions of sec. 4778, Rev. Stat., instead of the undertaking.

A number of errors are assigned, going to the admission of certain evidence. While some of the evidence was immaterial, we do not think it in any way prejudiced the rights of the contestant. The theory advanced by counsel for the contestant is that there was an agreement of separation between the petitioner and her husband, whereby their property rights were all settled and adjusted, and that the petitioner was paid $1,500 as her part of the community property, and that they separated with the purpose and intention never to reside together again.

The questions involved in said separation and the adjustment of their property rights were submitted to a jury and the jury found, in substance, that the deceased gave his con-

sent and approval to his wife's going away from their home in Fremont county; that on account of his cruel treatment she was compelled to abandon her home with him, and her absence from her home was enforced by his cruel treatment of her; that the division of property that was made was not made with a view of permanent separation; that she agreed to separate from her husband and live apart through fear, and that such separation was not mutually intended to be permanent and was not voluntary; that at the time of the death of McVay he was away temporarily from the premises sought to be set aside as a homestead, and that he did not leave said premises with the intention of taking up his residence elsewhere. Those findings were all in favor of the contention of the respondent.

After an examination of the evidence, we are satisfied that it supports the special findings of the jury and the findings deduced therefrom by the court. While there may have been some technical error in the admission and rejection of some of the evidence introduced and offered, we do not think it sufficient to demand a reversal of the judgment, for under the provisions of sec. 4231, Rev. Stat., it is provided that any error or defect must be disregarded when it does not affect the substantial rights of the parties, and that no judgment should be reversed or affected by reason of such error or defect. We think, under the facts of this case, that the petitioner or widow is entitled to have a homestead and all exempt property set apart to her.

It appears from the evidence that the real estate described in the petition was the home and residence of the deceased; that he had leased it for one year to Mr. Oleson, from March, 1905; that he had left it temporarily in May, because of sickness; that he grew worse and was taken to Salt Lake to a hospital to be treated; that he died there in July, 1905. From the facts as shown by the evidence, the deceased or his wife might have had said real property set apart as a homestead at the date of his death; they were only temporarily absent therefrom. As this matter was tried upon the theory that the probate court had no authority to set aside a homestead unless

out of property which could, under the law, have been selected as a homestead, at the date of decedent's death, the facts of this case bring it clearly within that theory or contention, and for that reason we are not required to decide that question.

We have examined all of the assigned errors and find nothing that would warrant a reversal of the judgment of the trial court. That judgment is, therefore, affirmed with costs in favor of the petitioner.

Ailshie, C. J., concurs.

Stewart, J., did not sit at the hearing or take any part in the decision.