(June 20, 1908.)

## In the Matter of the Application for a Writ of Habeas Corpus for HAZEL SHARP.

[96 Pac. 563.]

CONSTITUTIONAL LAW—CONSTITUTIONALITY OF ACT PROVIDING FOR THE CARE OF DELINQUENT CHILDREN—ACT NOT PENAL IN ITS NATURE—DUE PROCESS OF LAW—BINDING EFFECT OF ORDER AND JUDGMENT ON PARENT OR GUARDIAN—ORDERS BINDING ON THE MINOR ONLY IN PERSONAM—ORDER NOT BINDING OR CONCLUSIVE ON PARENT OR GUARDIAN—PARENT OR GUARDIAN ENTITLED TO HIS DAY IN COURT—JURISDICTION CONFERRED BY DELINQUENT CHILDREN'S ACT SIMILAR TO THAT OF APPOINTMENT—CONTROL AND DIRECTION OF GUARDIANS—JURISDICTION OF PROBATE COURT—RIGHT OF APPEAL FROM ORDERS OF PROBATE COURT.

1. The act of March 2, 1905, entitled, "An act to provide for the care of delinquent children," is not a penal or criminal statute in its nature, but is rather paternal, benevolent and charitable in its purposes and operation, and is intended to confer and grant favors, privileges and opportunities rather than to impose penalties, burdens or exactions.

2. A minor child is not entitled, either by nature or the laws of the land, to his absolute and unqualified freedom and liberty in the same sense as those terms are applied to adults, but is rather, during his minority, subject to the restraint and custody of either his parents and natural guardians, or of a legally appointed guardian to whom he owes obedience and subjection, and it is not an infringement of any constitutional right of a minor for the state to summarily lay hold on him at such time as he may be deprived or bereft of his parents or duly appointed guardian, and give to him the fostering care, protection and education that would be due him from his parent or guardian.

3. For the state to thus take charge, care and custody of a minor, for the purposes of protecting, educating and training him, is not depriving him of his liberty without due process of law within the purview and meaning of sec. 13, art. 1 of the constitution.

4. Under the provisions of the act for the care of delinquent children, an order of the probate court directing that the delinquent child be sent to the State Industrial Training School, and there detained for a fixed period of time, acts upon the child *in personam*, and is not binding upon the parent or guardian unless the latter is made a party to the proceeding in the probate court, and in such case, if the order runs against the parent or guardian, or in any way affects his rights as natural or legal guardian, he is given the right of appeal under sec. 4831, Rev. Stat.

5. It is a well-settled principle of law that no one is bound by a judgment or order of a court who is not made a party thereto and has not had his day in court, except parties privy in interest.

6. If a parent or guardian deems himself improperly or unlawfully deprived of the custody of his child or ward by the action or order of a probate court under the delinquent children's act, he has his remedy in a proper proceeding in the courts to test and determine his rights and the authority under which he has been deprived of such rights.

7. Under sec. 21, art. 5 of the constitution, probate courts "have original jurisdiction in all matters of probate . . . . and appointment of guardians," and under and by virtue of such constitutional power and jurisdiction, it is competent for the legislature to authorize and direct probate courts to make investigations of charges preferred concerning delinquent children and to make all necessary orders in relation thereto, as has been provided by the act of March 2, 1905, entitled, "An act to provide for the care of delinquent children." (Sess. Laws 1905, p. 106.)

8. Probate courts are courts of record in the matter of appointment of guardians and all other matters within the probate department or jurisdiction of such courts, and their duty to keep and maintain such records as are commonly kept by courts of record is imposed by the constitution, and therefore exists independently of any legislation to that effect.

9. Neither sec. 13 nor sec. 20 of article 5 of the constitution confers any absolute and unqualified right of appeal from an order or judgment of a probate court, but, on the contrary, grants the discretion to the legislature which may either confer or withhold the right of appeal in any and all matters coming before the probate court.

(Syllabus by the court.)

Original application by John Sharp for a writ of *habeas corpus* for the body of Hazel Sharp, alleged to be unlawfully detained and confined in the State Industrial Training School. Demurrer to the petition sustained and the *application denied and petition dismissed.*

Stockslager & Bowen, for Applicant.

Such acts as the delinquent children act of 1905 are criminal and violative of constitutional guaranties. (*People v. Turner,* 55 Ill. 28, 8 Am. Rep. 645.)

The act in question is in violation of art 10, secs. 20 and 21 of the constitution, in that it undertakes to limit the constitutional powers of the district courts and enlarge the constitutional powers of the probate court.

The jurisdiction of probate courts is not general, but is limited to the jurisdiction expressly granted by the constitution, and cannot be enlarged by implication. (11 Cyc. 656, 771; *Moore v. Koubly,* 1 Ida. 55; *Dewey v. Schreiber Imp. Co.,* 12 Ida. 280, 85 Pac. 921.)

In guardianship matters, probate courts are courts of record (Const., art. 5, sec. 21; *Dewey v. Schreiber Imp. Co.,* 12 Ida. 280, 85 Pac. 921), and the procedure provided for in the act is not the procedure of courts of record.

If the jurisdiction of the probate court is to be upheld in regard to juvenile offenders, on the ground that it is a matter of guardianship, then the procedure should be such as would be proper. The juvenile court does not proceed as a court of record. The hearing is informal; neither the parent nor the child is entitled to counsel; no court is held. Under sec. 11, any person may make a complaint. (No provision that the same shall be in writing.) The probate court shall hear and determine that complaint and the child may be committed to the industrial school. Under sec. 12 the probation officer shall "investigate" and furnish to the court such "information." In other words, the probation officer may inquire around and find out all the gossip and hearsay for or against the accused child, and furnish same to the court.

There is no opportunity for cross-examination, no opportunity for defense, but the child is subject to the informal orders of the judge made at any time or place, and upon any sort of testimony, competent or otherwise. (*Hutkoff v. Demorest,* 103 N. Y. 377, 8 N. E. 899, 10 N. E. 535.)

Where under a constitution it is provided that "final judgments in inferior courts may be brought by writ of error, or by appeal, into the supreme court in such a manner as may be prescribed by law," a statute which denies the right is unconstitutional. (*Norman v. Curry,* 27 Ark. 440; *Simpson v. Simpson,* 25 Ark. 487, 489.)

J. J. Guheen, Attorney General, and Edwin Snow, for Respondent.

Idaho has adopted its delinquent children law almost verbatim from the laws of other states. The particular law which we have evidently used as a form is found in the Session Laws of Utah of 1905 (chapter 117, page 182). As the Idaho act in question is compared section by section with the Utah law, it will be seen to contain the identical provision relative to procedure in the case of neglected and delinquent children. In the state of Utah the same attacks were made upon this law as are made in this proceeding here. The case in which these objections are disposed of is *Mill v. Brown,* 31 Utah, 473, 120 Am. St. Rep. 935, 88 Pac. 609.

Where this state has adopted a constitutional or statutory provision from the law of some other state, the judicial decisions interpreting that law are a part of the law itself. (*Shoshone County v. Profitt,* 11 Ida. 772, 84 Pac. 712.)

Counsel has called attention to only one case that is at variance with the principle laid down in the Utah decision. This is *People v. Turner,* 55 Ill. 280, 8 Am. Rep. 645. But even in the Illinois jurisdiction that case has been entirely overruled, and the interpretation laid down has been abrogated in *In re Ferrier,* 103 Ill. 367, 43 Am. Rep. 10.

The care and custody of delinquent children is properly a probate and guardianship matter wherein express jurisdic-

tion was conferred by the constitution. (*State v. North Dakota etc. Society,* 10 N. D. 493, 88 N. W. 273.)

Proceedings of this kind for the care and custody of neglected and delinquent children is in the nature of proceedings whereby the state, as *parens patriae,* substitutes itself for the natural and legal guardian under whose charge the child is on the path of immorality and crime. (1 Bailey on Jurisdiction, sec. 373; *Farnham v. Pierce,* 141 Mass. 203, 55 Am. Rep. 452, 6 N. E. 830; *Milwaukee Industrial School v. Milwaukee Supervisors,* 40 Wis. 328, 22 Am. Rep. 702; *Van Walters v. Board,* 132 Ind. 567, 32 N. E. 568, 18 L. R. A. 431; *McFall v. Simmons, Judge,* 12 S. D. 562, 81 N. W. 898.)

Counsel complain that the legislature did not follow the law of Utah and Colorado and other states in creating special juvenile courts having jurisdiction over this class of cases. But the provisions of our constitution expressly limit the legislative power to create courts additional to those mentioned in the constitution to cases where courts are established for "any incorporated city or town" (sec. 2, art. 5).

Appeals to the district court are entirely a matter of statute. They may be allowed or taken away by the provisions of the statute, and there is no constitutional provision to prohibit it (*Pierson v. Board of Land Commrs.,* 14 Ida. 159, 93 Pac. 775; *State v. Reed,* 3 Ida. 554, 32 Pac. 202.)

Final judgments of the probate court under the act in question may be reviewed on questions of law. If the facts established at the hearing do not constitute the child a delinquent, that is a matter of law which may be reviewed by a higher court.

Where a duty is enjoined upon the legislature, that duty must be performed by the legislature before constitutional provisions become operative. (*People v. Provines,* 34 Cal. 520; *Ex parte Wall,* 48 Cal. 279, 17 Am. Rep. 425; *In re State Census,* 6 S. D. 540, 62 N. W. 129; *Bull v. Conroe,* 13 Wis. 233; *Ex parte State,* 52 Ala. 231, 23 Am. Rep. 567.)

AILSHIE, C. J.—This is an application by the father of Hazel Sharp for a writ of *habeas corpus* to secure her dis-

charge from the Industrial Training School. Hazel Sharp is a girl of the age of fourteen years, and is now detained at the Idaho Industrial Training School at St. Anthony. It appears that she was committed by the probate judge of Blaine county on February 4, 1908, under the provisions of the act of March 2, 1905, entitled, "An act to provide for the care of delinquent children" (Sess. Laws 1905, p. 106). No question is made as to the regularity of the proceedings and commitment. The application is based solely upon constitutional grounds, which are set out in the petition as follows:

"(1) It is contrary to the provisions of Article 1, Section 7, of the Constitution of the State of Idaho.

"(2) It is contrary to Article 1, Section 13, of the Constitution of the State of Idaho.

"(3) It is contrary to Article 1, Section 18, of the Constitution of the State of Idaho.

"(4) It is contrary to Article 3, Section 16, of the Constitution of the State of Idaho.

"(5) It is contrary to Article 3, Section 17, of the Constitution of Idaho.

"(6) It is contrary to Article 5, Section 1, of the Constitution of Idaho.

"(7) It is contrary to Article 5, Section 13, of the Constitution of Idaho.

"(8) It is contrary to Article 5, Section 21, of the Constitution of Idaho.

"(9) It is contrary to Article 1, Section 6, of the Constitution of Idaho.

"(10) The said act is criminal in its nature, but denies to a person charged the right of a trial by jury; the right to a speedy and public trial; the right to process, or to appear and defend by person or counsel, and undertakes to deprive a citizen of the right of seeking protection in the Constitutional Courts of this state, and provides for no bail.

"(11) The said act embraces more subjects than are included in its title.

"(12) It is not plainly worded but is ambiguous and uncertain.

"(13) The act fails to provide any system of appeal, and undertakes to deny to persons charged any efficient or adequate appeal.

"(14) The act grants to probate judge absolute and sole jurisdiction, and jurisdiction not warranted by the constitution.

"(15) It is unconstitutional and void for the further reason that it provides for the taking of children from their parents, even though such parents may be able, competent and worthy of their care and education."

These questions have been reduced to the following propositions under which they have been argued by petitioner:

"I. Upon the grounds that the act is violative of the constitutional guaranties applicable to criminal procedure.

"2. That it improperly confers jurisdiction upon probate courts.

"3. Lack of or limiting right of appeal."

The first contention made by petitioner's counsel is that the act of March 2, 1905, entitled, "An act to provide for the care of delinquent children" (Sess. Laws 1905, p. 106), is in conflict with and in violation of secs. 6, 7, 13 and 18 of article 1 of the constitution, for the reason that it denies the right of trial by jury, speedy and public hearing, process for attendance of witnesses, the right to appear and defend in person and by counsel, and the right of bail, and that the proceeding is without due process of law.

We shall not go into a discussion of this question, or into any extended consideration of the distinction between this act and its purposes and provisions and that of the general spirit of the criminal law. These questions have all been so extensively, exhaustively and lucidly considered and discussed by so many courts within recent years that we shall content ourselves with a citation of some of the authorities. We may premise our citation of authorities, however, by a general statement that this statute is clearly not a criminal or penal statute in its nature. Its purpose is rather to prevent minors under the age of sixteen from prosecution and conviction on charges of misdemeanors, and in that respect to relieve them

from the odium of criminal prosecutions and punishments. Its object is to confer a benefit both upon the child and the community in the way of surrounding the child with better and more elevating influences and of educating and training him in the direction of good citizenship, and thereby saving him to society and adding a good and useful citizen to the community. This, too, is done for the minor at a time when he is not entitled, either by natural law or the laws of the land, to his absolute freedom,—but rather at a time when he is subject to the restraint and custody of either a natural guardian or a legally constituted and appointed guardian to whom he owes obedience and subjection. Under this law the state, for the time being, assumes to discharge the parental duty and to direct his custody and assume his restraint.

As late as 1905, the supreme court of Pennsylvania in *Commonwealth v. Fisher*, 213 Pa. 48, 62 Atl. 198, had under consideration these same constitutional objections to a legislative act providing for the care and custody of delinquent children, and in the course of its opinion, the court said:

''In pressing the objection that the appellant was not taken into custody by due process of law, the assumption, running through the entire argument of the appellant, is contended that the proceedings of the act of 1903 are of a criminal nature for the punishment of offenders for crimes committed, and that the appellant was so punished. But he was not, and he could not have been, without due process of law; for the constitutional guaranty is that no one charged with a criminal offense shall be deprived of life, liberty or property without due process of law. To save a child from becoming a criminal, or from continuing in a career of crime, to end in mature years in public punishment and disgrace, the legislature surely may provide for the salvation of such a child, if its parents or guardian be unable or unwilling to do so, by bringing it into one of the courts of the state without any process at all, for the purpose of subjecting it to the state's guardianship and protection. The natural parent needs no process to temporarily deprive his child of its liberty by confining it in his own home, to save it and to shield it from the

consequences of persistence in a career of waywardness; nor is the state, when compelled, as *parens patriae*, to take the place of the father for the same purpose, required to adopt any process as a means of placing its hands upon the child to lead it into one of its courts. When the child gets there, and the court, with the power to save it, determines on its salvation, and not its punishment, it is immaterial how it got there. The act simply provides how children who ought to be saved may reach the court to be saved. If experience should show that there ought to be other ways for it to get there, the legislature can, and undoubtedly will, adopt them, and they will never be regarded as undue processes for depriving a child of its liberty or property as a penalty for crime committed.

"The last reason to be noticed why the act should be declared unconstitutional is that it denies the appellant a trial by jury. Here again is the fallacy that he was tried by the court for any offense. 'The right of trial by jury shall remain inviolate,' are the words of the Bill of Rights and no act of the legislature can deny this right to any citizen, young or old, minor or adult, if he is to be tried for a crime against the commonwealth. But there was no trial for any crime here, and the act is operative only when there is to be no trial."

To the same effect, see *Mill v. Brown*, 31 Utah, 473, 120 Am. St. Rep. 935, 88 Pac. 609; *Prescott v. State*, 19 Ohio St. 184, 2 Am. Rep. 388; *Milwaukee Industrial School v. Supervisors of Milwaukee County*, 40 Wis. 328, 22 Am. Rep. 702; *Farnham v. Pierce*, 141 Mass. 203, 55 Am. Rep. 452, 6 N. E. 830; (and for exhaustive note on this subject, see pages 456 to 460 of 55 Am. Rep.); *State v. North Dakota etc. Home Society*, 10 N. D. 493, 88 N. W. 273; *Reynolds v. Howe*, 51 Conn. 472; *Ex parte Liddell*, 93 Cal. 633, 29 Pac. 251; *Ex parte Nichols*, 110 Cal. 651, 43 Pac. 9; *State v. Phillips*, 73 Minn. 77, 75 N. W. 1029; *In re Mason*, 3 Wash. St. 609, 28 Pac. 1025; *In re Kelley*, 152 Mass. 432, 25 N. E. 615; *State v. Kilvington*, 100 Tenn. 227, 45 S. W. 433, 41 L. R. A. 284; *Matter of Knowack*, 158 N. Y. 482, 53 N. E. 676, 44 L. R. A. 699; *Jarrard v. State*, 116 Ind. 98, 17 N. E. 912; *State v. Brown*,

50 Minn. 353, 36 Am. St. Rep. 651, 52 N. W. 935, 16 L. R. A. 691; *State v. Marmauget,* 111 La. 225, 35 South. 529.

Chief Justice Ryan of Wisconsin, in *Milwaukee Industrial School v. Supervisors of Milwaukee County,* in considering the constitutionality of an act somewhat similar to the one under consideration, said:

"When the state, as *parens patriae,* is compelled by the misfortune of a child to assume for it parental duty, and to charge itself with its nurture, it is compelled also to assume parental authority over it. This authority must necessarily be delegated to those to whom the state delegates the nurture and education of the child. The state does not, indeed we might say could not, intrude this assumption of authority between parent and child standing in no need of it. It assumes it only upon the destitution and necessity of the child, arising from want or default of parents. And, in exercising a wholesome parental restraint over the child, it can be properly said to imprison the child, no more than the tenderest parent exercising like power of restraint over children. This seems too plain to need authority; but the cases cited for the respondent, and others, amply sustain our view. . . . . It goes on the total failure of the parent to provide for the child. And it is difficult to comprehend the right of a parent to complain, that the discharge by the state of his own duty to his child, which he has wholly failed to perform, is an imprisonment of the child as against his parental right in it."

Although a child is in the care and custody of its parents, still the state assumes direction and control of its education to the extent of making its attendance upon the public schools compulsory, and that power is now recognized in almost every state in the union. In the exercise of this supervision and control on the part of the state, the child is not deprived of any constitutional or inalienable right, nor is the parent deprived of any right. On the contrary, the state is only demanding and enforcing obedience to both the natural duties and obligations of the parent or guardian as well as the legal duties and obligations demanded by society and the public welfare. It would be carrying the protection of "inalienable

rights'' guaranteed by the constitution a long way to say that that guaranty extends to a free and unlimited exercise of the whims, caprices or proclivities of either a child or its parents or guardians for idleness, ignorance, crime, indigence, or any kindred dispositions or inclinations.

It was seriously argued on the oral argument that this act has the effect of depriving a parent of the custody of his child without due process of law and in violation of his constitutional rights. On first blush, this contention might seem sound, but it will not bear investigation. In the first place, the order or decree of the probate court in such matters is one *in personam*, and acts upon the child alone. It is the paternal and benevolent hand of the state reaching out as *parens patriae* to take hold of the child during its minority for purposes of fostering, protecting and educating the child, and this power and authority and duty is intended to be exercised only in cases where the child is without the care and protection of a parent or guardian, or where the parent or guardian has become unable or neglects or refuses to control, manage, care for, educate and protect the child. In other words, this power and duty and obligation is exercised on the part of the state only in cases where the child is destitute of that care and protection to which it is entitled.

Now, as for the contention that the parent is deprived of the natural right to the custody and care of the child, we think that proposition is answered sufficiently and satisfactorily in this manner: If the parent objects to the child's being taken care of by the state in the manner provided for by the act, he may appear and present his objection. If, on the other hand, he is not made a party to the hearing and proceeding, under all the recognized rules of legal procedure, he is clearly not bound by the judgment and none of his rights are precluded. If he desires to contest the state's right to take the steps it has taken, he has his remedy in the courts to contest that right and adjudicate his own rights as fully and completely as if no order had been made with reference to the child. If his child were taken without any process whatever, or if it were kidnapped, he would have his remedy in the courts

to regain its possession; and so he has if his child is improperly taken from him under the provisions of this act. The order and judgment committing the child to the Industrial Training School does not run against the parent and does not determine any of his rights in that respect. On the other hand, we apprehend that a parent or guardian would not make very serious contentions for the custody of his child in a case where the action taken by the state is correct, and where the parent has been responsible for the conduct of the child or has been encouraging the child in its conduct or contributing to the delinquency, for the reason that under sec. 8 of the act, a parent doing so is guilty of a misdemeanor, and upon conviction thereof in due course of administration of the criminal law, may be fined, not exceeding the sum of $1,000, or imprisoned in the county jail, not exceeding one year, or by both such fine and imprisonment. The provisions of this latter section run directly against the parent, and, on the other hand, entitle him to all the constitutional rights and privileges accorded persons, accused of crime. Upon conviction thereof, the guilty parent or guardian is liable to the penalty the same as in other criminal prosecutions. To hold that the state must go through all the preliminaries and processes usual in the trial of criminal cases before it can give to the minor, who is bereft of its parent or guardian, the needed and necessary protection and care, would render the act nugatory and deprive it of a greater part of its benevolent purposes. The order or decree should adjudge both that the child is a delinquent, within the meaning of that term as defined in the act, and that he is either without the care and protection of a parent or guardian, or that the parent or guardian is neglecting and failing to discharge the duties he owes to the child. (*Mill v. Brown, supra; Farnham v. Pierce, supra; Milwaukee Industrial School v. Supervisors, etc., supra; In re Kelley, supra.*) Such finding and decree, however, simply establish the status and conditions of the child and the existing necessity for granting it the protection, nurture and aid of the state, and in no re-

spect does it determine or adjudicate any right of the parent or guardian. (See cases last above cited.)

Passing now to the next contention made by petitioner to the effect that the jurisdiction here conferred upon probate courts is unconstitutional and in violation of sec. 21 of art. 5 thereof, in that it confers an unwarranted jurisdiction on the probate courts, we will briefly examine the constitutional jurisdiction conferred as compared with the jurisdiction granted by this act. Sec. 21 of art. 5, which confers jurisdiction on the probate courts, is as follows:

"The probate courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, and appointment of guardians; also jurisdiction to hear and .determine all civil cases wherein the debt or damage claimed does not exceed the sum of five hundred dollars, exclusive of interest, and concurrent jurisdiction with justices of the peace in criminal cases."

Assuming for the purposes of this decision, which we do, that the power and authority granted by this act is purely judicial in its nature, still we are satisfied that it comes clearly within the constitutional jurisdiction of probate courts whereby they are granted original jurisdiction for the appointment of guardians. It is true that in ordering and directing a delinquent minor to be sent to the industrial school, the court is not appointing a guardian in the usual and ordinary way, and yet the effect is, and must of necessity be, that the superintendent, officers and instructors of the school, working under and by appointment and authority of the state, for the time being have the care, custody and nurture of the minor during its stay at the school. To this extent, the order of the probate court has the effect of appointing a temporary guardian for the person of the minor. This is no more, however, than the parent does for his child when he sends him away from home to boarding-school or college; or, indeed, during the day while the child is in the public school.̄ The authority of the teacher in the public school is superior and paramount to that of the parent or guardian during school

hours. It would be fatal to the highest and greatest good, both of the individual and of the state, as well as a decided blow at popular education and enlightenment if the state could not enforce compulsory school laws and direct parents and guardians to send their children to school during certain hours, or days, or months, as the case may be. The delinquent children's act is only carrying this principle a step further, and providing for the state assuming the duties of parents or guardians where the child is so unfortunate as to have no one to discharge toward him these duties, or where the parent or guardian has neglected, or fails or refuses to observe and discharge the duties which thus devolve upon him. To this extent, and for the purposes of accomplishing the ends intended by this act, the probate court under its jurisdiction to take charge of orphans and minors left without protectors and to appoint guardians and direct and control them in the exercise of their duties, has a clear and unmistakable power and jurisdiction to lay hold upon the child, and make such summary investigation as is necessary and ascertain its true status and condition and place it in the custody of the authorities at the State Industrial Training School.

In this connection it is further contended that the act is unconstitutional, for the reason that probate courts, as such, are courts of record, and that the procedure provided for in the delinquent children's act is not the procedure of courts of record. We fail to see any merit in this contention, for the reason that if the act itself made no provision whatever for the keeping of the record, it would still be the duty of the probate court to keep a proper record of its proceedings in relation to all matters transacted under the provisions of the act, since that court is a constitutional court of record in all matters of guardianship and all other matters transacted in the probate department thereof. But sec. 2 of the act itself specifically provides that ''The probate courts of the several counties in the state shall have jurisdiction in all cases coming within the terms and provisions of this act. Record books·shall be kept by the court for all cases coming within the provisions of this act, to be known as 'The juvenile rec-

ord,' and the docket or calendar of the court upon which there shall appear the case or cases under the provisions of this act shall be known as 'the juvenile docket,' '' This, it seems to us, is specific as to the keeping of records in these matters. The fact that the records and dockets kept are called "juvenile records and dockets" can make no difference. The name does not change the organization or jurisdiction of the court that is to transact the business. (*Commonwealth v. Fisher, supra.*)

It is next contended that the act is unconstitutional, for the reason that it does not provide an adequate remedy by appeal, or if it be held that it provides for any appeal, that it has undertaken to limit the right thereof. Sec. 3 of the act provides as follows:

''When the information or complaint so states a cause of delinquency under the provisions of this act, that the court may understand it, all irregularities or defects of form therein must be disregarded and all technical pleas or objections thereto, must be summarily disposed of by the court, and the court's ruling thereon shall be final.''

Here it will be observed that the legislature simply undertook to make the ruling of the probate court final on such matters as it termed ''irregularities or defects of form,'' or ''technical pleas or objections.'' Now, as to just what the legislature meant by those expressions would be a matter for judicial construction and determination. We take it, however, that it was simply a re-enactment of the old provisions of our statute to the effect that defects and irregularities should be disregarded that do not affect the substantial rights of the parties litigant. (Sec. 4231, Rev. Stat.)

Sec. 13 of the act provides that ''all orders of final judgments made by any probate court or the judge thereof, under this act, may be reviewed upon questions of law only.'' Counsel for petitioner insists that this limitation has the effect of making the decision or order of the probate court final as to all the facts involved in the matter, and that it thereby abridges a constitutional right. Now, as we have above said, the parent or guardian cannot be bound by the order or

judgment of the probate court in adjudging a child delinquent and sending him to the Industrial Training School unless he has appeared or been brought into the proceeding in the probate court. If he has been a party to the proceeding in the probate court, and an order has been made that affects him or is binding on him in any respect, as herein considered, then he clearly has the right of appeal under sec. 4831, Rev-Stat. If he has not been in the case or made a party thereto, and no order has been entered binding him, he has no occasion for appeal in that proceeding.

If it be argued that the infant should have the right of appeal and that such a right is a constitutional right, we answer by saying that the right would be of no avail to the minor who is being proceeded against, for the reason that he could not exercise it except by his parent or guardian or next friend. In other words, he himself, in his individual capacity, could have no standing in court on account of his minority, except through his legal representative. On the other hand, when the court undertakes to make any order or enter any judgment that is binding upon or affects the minor's legal representative, either removing him as guardian or adjudging and decreeing his incapacity or unfitness for the office, or affecting any of the property rights of the ward,—then and thereupon the parent or guardian must be duly and regularly brought into court and have his day in court, and from the judgment or order entered, has his right of appeal under sec. 4831, Rev. Stat. (See authorities last above cited.)

It is well enough, perhaps, to say here and now that the constitution grants no absolute right of appeal from an order or judgment of a probate court. Sec. 20, art. 5 of the state constitution provides that "The district court shall have original jurisdiction in all cases both at law and in equity, and such appellate jurisdiction as may be conferred by law." Now, we take it that the legislature might decline to confer any appellate jurisdiction from an order or judgment of a probate court (*In re Estate of McVay,* 14 Ida. 56, 93 Pac. 28), and if it should do so, we know of no power or authority to enforce such an assumed right or of the courts to intervene and

grant it as a right. The same organic law that contains the foregoing section and article also prescribes the jurisdiction of the probate court, and if it had been the intention to make this right an absolute right, we take it the constitution would have said so. When it comes to the matter of appeals from the district court, we find a different provision. Section 9, art. 5, says: "The supreme court shall have jurisdiction to review, upon appeal, any decision of the district courts, or the judges thereof." It will be observed that it says nothing about either the supreme or district court reviewing decisions of the probate courts. The matter of appeals from probate courts is within the legislative will, and the lawmaking power may regulate it, extend or limit it as it sees fit. Even though the command to the legislature be imperative, no power exists in the courts to discharge this duty for it. This view is borne out by the following authorities: In re *Estate of McVay,* 14 Ida. 56, 93 Pac. 28; *Pierson v. State Board of Land Commrs.,* 14 Ida. 159, 93 Pac. 775; *State v. Reed,* 3 Ida. 554, 32 Pac. 202; *People v. Richmond,* 16 Colo. 274, 26 Pac. 929; *Ex parte Wall,* 48 Cal. 279; 17 Am. Rep. 425; *In re State Census,* 6 S. D. 540, 62 N. W. 129.

Counsel for petitioner lays particular stress on the provisions of sec. 13 art. 5 of the constitution, which provides that the legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a co-ordinate department of the government, but that it shall provide a proper system of appeals, etc. Counsel argues that this section of the constitution has the effect of granting the right of appeal from judgments and decisions of probate courts, and that the legislature cannot limit or abridge that right. We do not think the framers of the constitution ever intended by adopting this section to confer the right of appeal as an absolute and unqualified right. It was rather, as we view the matter, the intent to leave the matter of appeals to the legislature. The cases and matters in which appeals might be prosecuted and also the practice and procedure was left to the legislature, and if it should see fit not to provide any method of appeal or should provide that appeals could not be

had in any case from a probate court, the legislative conclusion and decision would be final and conclusive. The courts cannot compel the legislature to enact laws, nor can they supply legislative omissions.

In concluding our consideration of this case, it is well enough to observe that the petitioner does not make any charge in this case that his daughter was not in fact a delinquent child within the meaning and purview of the legislative act, nor does he make any contention that he has been improperly deprived of her custody and control, if the act is valid. The only contentions urged here have been that the legislative act itself is unconstitutional. We are satisfied that the act is valid and was a constitutional exercise of the legislative will and judgment. The demurrer to the petition is therefore sustained, the writ is denied and the petition is dismissed.

Sullivan, J., and Stewart, J., concur.