OF

# PENNSYLVANIA.

EASTERN DISTRICT, DECEMBER TERM, 1838.

| | |
|---|---|
| 4 Wh | 9 |
| 213 | 56 |
| 213 | 57 |

[PHILADELPHIA, JANUARY 3RD, 1839.]

## Exparte CROUSE.

### HABEAS CORPUS.

The provisions of the acts of 23rd of March 1826, and 10th of April, 1835, which authorise the committal of infants to the House of Refuge, under certain circumstances, and their detention there, without a previous trial by jury, are not unconstitutional.

THIS was a *habeas corpus* directed to the keeper and managers of the "House of Refuge," in the county of Philadelphia, requiring them to produce before the Court one Mary Ann Crouse, an infant, detained in that institution. The petition for the *habeas corpus* was in the name of her father.

By the return to the writ it appeared, that the girl had been committed to the custody of the managers by virtue of a warrant under

VOL. IV.

(Exparte Crouse.)

the hand and seal of Morton M'Michael, Esq., a justice of the peace of the county of Philadelphia, which recited that complaint and due proof had been made before him by Mary Crouse, the mother of the said Mary Ann Crouse, "that the said infant by reason of vicious conduct, has rendered her control beyond the power of the said complainant, and made it manifestly requisite that from regard to the moral and future welfare of the said infant she should be placed under the guardianship of the managers of the House of Refuge;" and the said alderman certified that in his opinion the said infant was " a proper subject for the said. House of Refuge." Appended. to the warrant of commitment were the names and places of residence of the witnesses examined, and the substance of the testimony given by them respectively, upon which the adjudication of the magistrate was founded.

The House of Refuge was established in pursuance of an act of assembly passed on the 23rd day of March, 1826. The 6th section of that act declared that the managers should, " at their discretion, receive into the said House of Refuge, such children who shall be taken up or committed as vagrants, or upon any criminal charge, or duly convicted of criminal offences, as may be in the judgment of the Court of Oyer and Terminer, or of the Court of Quarter Sessions of the peace of the county, or of the Mayor's Court of the city of Philadelphia, or of any alderman or justice of the peace, or of the managers of the Alms-house and house of employment, be deemed proper objects." By a supplement to the act passed on the 10th day of April 1835, it was declared, that in lieu of the provisions of the act of 1826, it should be lawful for the managers of the House of Refuge "at their discretion, to receive into their care and guardianship, infants, males under the age of twenty-one years, and females under the age of eighteen years, committed to their custody in either of the following modes, viz. First: *infants committed by an alderman or justice of the peace on the complaint and due proof made to him by the parent, guardian or next friend of such infant, that by reason of incorrigible or vicious conduct such infant has rendered his or her control beyond the power of such parent, guardian or next friend, and made it manifestly requisite that from regard for the morals and future welfare of such infant, he or she should be placed under the guardianship of the managers of the House of Refuge. Second: infants committed by the authority aforesaid, where complaint and due proof have been made that such infant is a proper subject for the guardianship of the managers of the House of Refuge, in consequence of vagrancy, or of incorrigible or vicious conduct, and that from the moral depravity or otherwise of the parent or next friend in whose custody such infant may be, such parent or next friend is incapable or unwilling to exercise the proper care and discipline over such incorrigible or vicious infant. Third: infants committed*

(Exparte Crouse.)

by the Courts of this commonwealth in the mode provided by the act to which this is a supplement."

Mr. *W. L. Hirst,* for the petitioner, now contended, that these provisions so far as they authorised the committal and detention of an infant without a trial by jury, were unconstitutional. He referred to the sixth and ninth sections of the Bill of Rights; and cited *The Commonwealth* v. *Addicks,* (5 *Binn.* 520; *S. C.* 2 *Serg. & Rawle,* 174.) *Commonwealth* v. *Murray,* (4 *Binn.* 492. 494.)

Mr. *Barclay* and Mr. *J. R. Ingersoll,* for the managers of the House of Refuge.

PER CURIAM.—The House of Refuge is not a prison, but a school. Where reformation, and not punishment, is the end, it may indeed be used as a prison for juvenile convicts who would else be committed to a common gaol; and in respect to these, the constitutionality of the act which incorporated it, stands clear of controv It is only in respect of the application of its discipline to sub admitted on the order of a court, a magistrate, or the managers the Alms-house, that a doubt is entertained. The object of the charity is reformation, by training its inmates to industry; by imbuing their minds with principles of morality and religion; by furnishing them with means to earn a living; and, above all, by separating them from the corrupting influence of improper associates. To this end, may not the natural parents, when unequal to the task of education, or unworthy of it, be superseded by the *parens patriæ,* or common guardian of the community? It is to be remembered that the public has a paramount interest in the virtue and knowledge of its members, and that, of strict right, the business of education belongs to it. That parents are ordinarily entrusted with it, is because it can seldom be put into better hands; but where they are incompetent or corrupt, what is there to prevent the public from withdrawing their faculties, held, as they obviously are, at its sufferance? The right of parental control is a natural, but not an unalienable one. It is not excepted by the declaration of rights out of the subjects of ordinary legislation; and it consequently remains subject to the ordinary legislative power, which, if wantonly or inconveniently used, would soon be constitutionally restricted, but the competency of which, as the government is constituted, cannot be doubted. As to abridgment of indefeasible rights by confinement of the person, it is no more than what is borne, to a greater or less extent, in every school; and we know of no natural right to exemption from restraints which conduce to an infant's welfare. Nor is there a doubt of the propriety of their application in the particular instance. The infant has been snatched from a course which must have ended in confirmed depravity; and,

(Exparte Crouse.)

not only is the restraint of her person lawful, but it would be an act of extreme cruelty to release her from it.

Remanded.