## LIABILITY FOR FAILURE TO GIVE CHILDREN OF SCHOOL AGE PROPER EDUCATIONAL ADVANTAGES.

Common Pleas Court of Hamilton County,
Division of Domestic Relations.

In Re Martha G. Hargy and Harry E. Hargy, Jr.

Decided, December, 1920.

*Parent and Child—Extent of the Education which Must be Provided for Children—Right of School Authorities to Require Vaccination—Nature of the Offense Involved in Refusal to Permit Children to be Vaccinated with Consequent Deprivation of School Advantages.*

1. The court construes Section 1645, General Code, as requiring parents to provide their children with a proper education, which means an education subbstantially equivalent to that furnished by the public schools.

2. Boards of education may exclude children from the public schools for non compliance with existing rules and regulations relating to vaccination.

3. While the parents of children thus excluded are not liable to prosecution under the compulsory education act, such exclusion can not be pleaded as an excuse for failure to provide their children with the education required by the statute. Children so deprived of school advantages may be declared "dependent," and any person causing or contributing to such dependency is liable to prosecution therefor.

*John Weinig* and *Harry R. Weber,* counsel for petitioner.
*Nelson Cramer, Julius Samuels* and *Arthur Gordon,* counsel for Harry E. Hargy, Sr.

Hoffman, C. W., J.

On December 2, 1920, a petition was filed in the Juvenile Court by a resident and citizen of Hamilton county, charging Martha G. Hargy and Harry E. Hargy, Jr., minors of the age of eight and ten years, respectively, with dependency; in that by reason of the neglect and conduct of their father, Harry E. Hargy, Sr., they are prevented from receiving a proper education.

This action is brought under that provision of the juvenile court act, designated in the General Code as Section 1645. This section is as follows:

*"Dependent child defined.* For the purpose of this chapter, the words 'dependent child' shall mean any child under eighteen years who is dependent upon the public for support; or who is homeless or abandoned; or who has not proper parental care or guardianship; or who begs or receives alms; or who is given away or disposed of in any employment, service, exhibition, occupation or vocation contrary to any law of this state; who is found living in a house of ill fame, or with any vicious or disreputable persons or whose home, by reason of neglect, cruelty or depravity on the part of his parent, step-parent, guardian or other person in whose care it may be, is an unfit place for such child; or who is prevented from receiving a proper education because of the conduct or neglect of its parents, step-parent, guardian or other persons in whose care it may be; or whose environment is such as to warrant the state, in the interest of the child in assuming its guardianship." (99 O. L., 193, as amended May 27, 1915.)

The particular clause of the section under which the children mentioned in the petition are charged as being dependents is that which defines a dependent child as one "who is prevented from receiving a proper education because of the conduct or neglect of its parents, step-parent, guardian or other person in whose care it may be.

That the state is the ultimate guardian of all children within its borders who need aid, protection, care, training and education, and that the state as *parens patriae* can assume the duties that have been neglected by the parents or natural guardians is a principle grounded in early English law and recognized in all chancery courts, both English and American, through the intervening years to the present day.

The common law enumerated the duties of parents toward children as being that of maintenance, protection and education, although the duty of providing an education was considered usually as a moral rather than a legal obligation. The sanctions, however, upon which these duties and obligations of parents were supposed to be founded were so slight that previous

to the enactment of the juvenile court codes, there was "no effective control on the part of the community over the exercise of the parental rights and the performance of parental duties," and children were deprived of maintenance, support and especially education, when their interests were in conflict with the individualistic ideas and interests of their parents.

That the state has the power to provide that if the parents neglect to give their children a proper education, they may be superseded by the *parens patriae* or common guardian of the community, is disclosed in the opinion of Chief Justice Gibson, in the case of *Ex Parte Crouse,* 4 Wharton, 9 (Pa.) (1838):

"May not the natural parents, when unequal to the task of education, or unworthy of it, be superseded by the *parens patriae,* or common guardian of the community? It is to be remembered that the public has a paramount interest in the virture and knowledge of its members, and that of strict right, the business of education belongs to it. That parents are ordinarily entrusted with it is because it can seldom be put into better hands; but where they are incompetent or corrupt, what is there to prevent the public from withdrawing their faculties, held as they obviously are at its sufferance? The right of parental control is a natural, but not an inalienable one. It is not excepted by the declaration of rights out of the subjects of ordinary legislation."

Statutes similar to that of Section 1645 of the General Code and now under consideration have been enacted in a majority of the states of the Union and their validity and constitutionality have been confirmed by the courts.

In an opinion of the Supreme Court of Pennsylvania it is stated that:

"Every statute which is designed to give protection, care and training to children, as a needed substitute for parental authority, and performance of parental duty, is but a recognition of the duty of the state as the legitimate guardian and protector of children where other guardianship fails. No constitutional right is violated." *Commonwealth* v. *Fisher,* 213 Pa. St., 48.

In the case of *Ex Parte Sharp,* 15 Idaho, 120, the Supreme Court of Idaho, in referring to the juvenile court act, says:

"Its object is to confer a benefit both upon the child and the community in the way of surrounding the child with better and more elevating influences, and of educating and training him in the direction of good citizenship, and thereby .saving him to society, and adding a good and useful citizen to the community. * * *

"It would be carrying the protection of 'inalienable rights' guaranteed by the Constitution, a long way to say that that guaranty extends to a free and unlimited exercise of the whims, caprices or proclivities of either a child or its parents or guardians, for idleness, ignorance, crime indigence, or any kindred dispositions or inclinations."

In the opinion in the case of *In Re Janurewski*, 196 Federal Reporter, 123, the statement of Judge Sater in respect to Section 1644 of the General Code defining a delinquent child, and also in respect to the purpose and object of the juvenile court act, is applicable as well to Section 1645 relating to dependent children:

"The purpose of the statute is to save minors under the age of seventeen years from prosecution and conviction on charges of misdemeanors and crime, and to relieve them from the consequent stigma attached thereto; to guard and protect them against themselves and evil minded persons surrounding them; to protect and train them physically, mentally and morally. It seeks to benefit not only the child, but the community also, by surrounding the child with better and more elevating influences and training it in all that counts for good citizenship and usefulness as a member of society. Under it, the state, which through its appropriate organs is the guardian of the children within its borders, assumes the custody of the child, imposes wholesome restraints, and performs parental duties, and at a time when the child is not entitled either by the laws of nature or of the state to absolute freedom, but is subjected to the restraint and custody of a natural or legally constituted guardian to whom it owes obedience and subjection. It is of the same nature as statutes which authorize compulsory education of children, the binding of them out during minority, the appointment of guardians and trustees to take charge of the property of those who are incapable of managing their own affairs, the confinement of the insane, and the like. The welfare of society requires and justifies such enactments. The statute is neither criminal nor penal in its nature, but an administrative police regulation."

It is evident from the decisions in the cases cited and the decisions in many other cases of like character and import, that the principle is firmly established that "the community and not the parent has the power to determine when the interests of the child are being ignored and inadequately protected."

In this state it has been determined, by virtue of Section 1645 of the General Code, that the interests of the child are being ignored when he is prevented from receiving a proper education because of the neglect or conduct of his parents.

A proper education from the viewpoint of the state is that course of instruction given in the common or public schools. The ordinance of 1787 declared that religion, morality, and knowledge were essential to good government and that schools and means of education should be encouraged. Acting on this warrant the Legislature in 1826 passed the first act establishing free schools in Ohio.

From 1826 to the present time this act has been followed by statute upon statute defining proper education in terms of the courses of study and instruction to be given in the common schools, and which the state deems necessary for its security and welfare. Insofar, therefore, as the juvenile court representing the state is concerned, the term "proper education" as used in the statute may be defined as that education which is of like character and equivalent to that provided by the state through the medium of common schools.

The evidence in this case reveals that from November 23, 1920, to December 3, 1920, the children mentioned in the petition did not attend a public, private or parochial school. The evidence further discloses that at the time of the hearing of this cause the child Martha G. Hargy was enrolled in the Elmwood public school and receiving the usual course of instructions prescribed by law. The child, Harry E. Hargy, Jr., however, is receiving no education of any kind. It is true that the father testifies that "he has made efforts to have his child educated at home by his mother in the rudimentary subjects," but the evidence clearly discloses that such instruction, if it may be so designated, as he is receiving in the home does not approximate as nearly as the circumstances and conditions of both the child and Harry E.

Hargy, Sr., warrants, the instruction provided by the public schools. In fact the statements of the father and the evidence clearly show that he is a man of good moral character and desirous of providing his child with a proper education and possibly in the near future will do so, but at the time of the hearing no effort was being made by him in this respect.

In defense of this action, which, as stated, has for its purpose that of establishing the status of the children mentioned in the petition as ''dependents'' on the ground that they are not receiving a proper education, the father states that previous to November 22, 1920, his children attended the Mary Dill public school, at Carthage, within the school district of the city of Cincinnati; that on that date they were excluded because of not presenting a certificate of vaccination in accordance with the rules and regulations of the board of education of the city of Cincinnati, which provides that children who do not present certificates of vaccination, or are not vaccinated when found to be fit subjects by the physicians of the school, unless suffering from certain specific diseases, may be excluded from admission to the public schools until there is compliance with such orders.

That boards of education may make such rules and regulations and enforce them even to the exclusion of children from attendance at the public schools has been definitely decided by the Supreme Court of this state in the case of the *State, ex rel Milhoof* v. *Board of Education of the Village of Barberton,* 76 O. S., 297, the syllabus of which is as follows:

''Section 3986, Revised Statutes, authorizing and empowering the board of education of each school district, 'to make and enforce such rules and regulations to secure the vaccination of, and to prevent the spread of smallpox among the pupils attending or eligible to attend the schools of the district, as in its opinion the safety of the public require,' is a valid enactment, not repugnant to the Constitution of the state of Ohio, nor violative of the Fourteenth Amendment of the Constitution of the United States. And under the power thereby conferred, boards of education in the exercise of a sound discretion, may exclude from the public schools all children who have not been vaccinated.

''The enactment of said statute by the General Assembly was but a reasonable exercise of the police power of the state; un-

der its provisions, the validity of the action taken by the board of education in excluding from the public schools all children who have not been vaccinated, or who do not furnish a physician's certificate excusing them from vaccination, does not depend upon the actual existence of smallpox in the school district or community, nor upon an apprehended epidemic of that disease.

"Whether a rule or regulation adopted by the board of education under favor of the provisions of above Section 3986 is a reasonable rule or regulation is to be judged of in the first instance by the board of education, and the courts will not interfere unless it is clearly shown that there has been an abuse of official discretion."

It is clear that under the law, as stated in this case, the board of education of the city of Cincinnati did not transgress its powers or infringe upon the legal rights of the parents of the Hargy children, or of the children themselves when the board of education excluded them from the public school.

The father, however, contends that inasmuch as his children have been thus prevented by law from attending the public school, that this relieves him from the duty of giving them a proper education in accordance with the juvenile court act as interpreted by this court.

This contention again is no more than a denial of the power of the state, irrespective of the existence of public schools, to supersede natural parents and as *parens patriae* assume the guardianship of all children which the state by statute deems in need of aid, protection and education. As stated in the case of *Commonwealth* v. *Fisher, supra,* in discussing the juvenile court act:

"The act is but an exercise by the state of its supreme power over the welfare of the children, a power under which it can take the child from its father and allow it to go where it will, without committing it to any guardianship or institution, if the welfare of the child, taking its age into consideration, can be thus best promoted."

The state of Ohio, in the exercise of its supreme power over the welfare of children, has declared in Section 1645 of the

General Code that children who are deprived of a proper education by reason of the neglect or conduct of its parents shall become wards of the state. That the state at tremendous cost and expense provided common schools for the purpose of assisting the parents in giving children a proper education, and of which the parents may avail themselves on compliance with all lawful rules and regulations, in no way nullifies the power of the state to demand that all children receive a proper education even though the parents by their acts deprive themselves, with impunity, of the facilities offered by the state.

It can not be questioned that if the state were to repeal all laws providing for public schools, nevertheless it could demand that children receive a proper education. These laws in effect by act of the father, have been repealed in the present instance so far as the father of the Hargy children is concerned, but the state in the exercise of a power firmly grounded in both English and American jurisprudence can still demand that he give his children a proper education under the penalty, if it may be so called, of having his children declared dependent. The following cases heretofore mentioned confirm this doctrine. *Ex Parte Crouse,* 4 Wharton, 9; *Commonwealth* v. *Fisher,* 213 Pa. State, 48; *Ex Parte Sharp,* 15 Idaho, 120; *In re Janurewski,* 196 Federal Reporter, 123.

If a child is adjudged dependent on the ground that he is prevented from receiving a proper education because of the conduct or neglect of its parents, any person who has contributed towards such dependency may be prosecuted under Section 1654 of the General Code, which section is a part of the juvenile court act, and is as follows:

"*Penalty for abuse or aiding and abetting delinquency.* Whoever abuses a child, or aids, abets, causes, encourages or contributes toward the dependency, neglect or delinquency as herein defined of a minor under the age of eighteen years, or acts in a way tending to cause delinquency in such minor, shall be fined not less than ten dollars, nor more than one thousand dollars, or imprisoned not less than ten days nor more than one year or both. Each day of such contribution to such dependency, neglect or delinquency shall be deemed a separate offense. * * *"

Under this section a parent can not be prosecuted for not sending his child to a public, private or parochial school. That he has not sent his child to such schools when they were available to him might be introduced in evidence in some cases for the purpose of proving neglect and conduct that contributed to the child's dependency. However, if a child be excluded from the public, private or parochial schools because of his not being vaccinated and his father has not availed himself of the privileges of these schools or refuses to do so because of the requirements of vaccination, this in itself is not such neglect or conduct that would subject him to prosecution under Section 1654 for contributing to dependency.

In the present case the father of the Hargy children is not prosecuted under Section 1654 for not sending his children to a public, private or parochial school, nor for contributing to their dependency on the ground that he has not permitted his children to be vaccinated. The statute does not oblige him to send his children to these schools or compel him to have his children vaccinated, but irrespective of the fact that the privileges of the schools have been denied him, the statute still imposes the duty upon him to give his children a proper education, and on his failure to do so. he may be prosecuted under Section 1654 for such neglect.

In the case of *State* v. *Turney,* 12 C. C. (N. S.), 33, the Circuit Court held that:

"A parent who sends his child to a public school and is willing to continue to do so, but the child is excluded for failure to comply with a rule of the board of education requiring vaccination, is not liable to conviction under the compulsory education act."

It will be observed that this case, taken in connection with the case of *State, ex rel,* v. *Board of Education,* 76 O. S., 297, determines conclusively that when children are not vaccinated the rights and privileges of the schools may be withdrawn, and that when such rights and privileges are withdrawn and children are excluded from the schools the parents are not liable under the compulsory education act.

A board of education may exclude from school a child not vaccinated, but if excluded for that reason a parent can not be prosecuted for failing to send the child to that school under the compulsory education act.   In other words, the parent surrenders the privilege of sending his child to a public school; insofar as he is concerned the public schools do not exist.  This, however, does not lessen his duty to give the child a proper education such as enjoined by the state in pursuance of its supreme power over the welfare and education of children, and on his failure to do so he is liable under Section 1654 for contributing to dependency.

By way of summarizing the conclusions of the court are as follows:

1.   That under Section 1645 a parent must provide his child with a proper education, which education shall be substantially equivalent to the education provided by the common schools.

2.   That boards of education may exclude children from the public schools upon non-compliance with its rules and regulations concerning vaccination.

3.   That parents of the children thus excluded are not liable to conviction under the compulsory education act.

4.   That the parents of the children thus excluded can not offer such exclusion as an excuse for failure to provide the children with a proper education as required by Section 1645.

5.   That if children are excluded from the public schools on non-compliance with regulations relating to vaccination they may be declared dependent under Section 1645, if they are prevented from receiving a proper education, as herein defined, because of the neglect or conduct of their parents.

6.   That any person who causes or contributes towards the dependency of a child who has been deprived of a proper education as the statute sets forth is liable to conviction for causing or contributing towards dependency under Section 1654 of the General Code.

In the present case the evidence showing that Martha E. Hargy is attending the public schools, this cause so far as it relates to her is dismissed.

In respect to the child Harry E. Hargy: while the court finds that at this time he is not receiving a proper education and might lawfully be declared dependent, yet it appears that at the time of the filing of the petition his father, Harry E. Hargy, Sr., had neglected this duty for eight days only and at the time of the hearing expressed his desire to give his child a proper education. In view of these facts it appears to the court that the state would not be justified in superseding the parents and making provision for the child's education, until it is conclusively shown that the said Harry E. Hargy, Sr., intends to persist in his present line of conduct and neglect his duty to give his child a proper education.

This cause, therefore, in respect to the child Harry E. Hargy, Jr., will be continued to the 14th day of January, 1921, his father being given the opportunity in the meantime to provide for giving his child a proper education which in this instance shall be equivalent substantially to that provided by the common schools.

In the event that on or before January 14, 1921, it be found that the said child, Harry E. Hargy, Jr., is receiving a proper education as herein stated, this cause will be dismissed; otherwise on that day the child will be declared dependent and thus made a ward of juvenile court.