# In the Matter of Sophie Henlein (Also Called Handline).

*Parent and child—Custody of child—Right of parent—Act of April 23, 1903, P. L. 274.*

A child who has been placed in an institution as a dependent, should be restored to the custody of its father who has remarried, and is able to provide a proper home for it.

Under the Provisions of Section 4 of the Act of April 23, 1903, P. L. 274, the Court must determine, after an inquiry into the facts, what order for the commitment and custody and care of the child, the child's own good and the best interests of the state may require. This does not invest the Court with arbitrary power; on the contrary the Court must proceed according to law.

Argued November 11, 1925.  Appeal No. 253, October T., 1925, by Peter Henlein, from judgment of Municipal Court of Philadelphia County (Juvenile Division) No. 11,400, in the matter of Sophie Henlein.  Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.  Reversed.

Petition for custody of minor child.  Before MAC-NEILLE, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the petition and refused to award the custody of the child to her father.  Petitioner appealed.

*Error assigned* was the decree of the court.

*Peter M. MacLaren* and *Albert L. Moise,* for appellant.

*Franklin E. Barr,* Assistant District Attorney, and with him *Tillie Thompson,* Assistant District Attorney, and *Samuel P. Rotan,* District Attorney, for appellee.

OPINION BY LINN, J., February 26, 1926:

This appeal is from an order on re-hearing, dismissing a father's petition for the restoration to him and his family of his minor daughter and for her discharge from the Haddock Memorial Home, to which she was committed by the court below in 1917, as a dependent child pursuant to the juvenile court act of April 23, 1903, P. L. 274.  The child was born in October 1917; her mother died two or three days later, leaving surviving a husband, the petitioner, and five small children.  He was a working man and unable both to work and to attend to those children.  Accordingly, they were then placed in various institutions and all but this one have long since been restored to him.  The district attorney's brief states that she "was placed through the Society for the Prevention of Cruelty to Children, in the Haddock Memorial Home," when she was only a few months old.

At the date of the order now complained of, she was nearly eight years of age.  Some years ago the father married a second time, and established a home in which

he and his wife live with all his children, except this child Sophie. The court below states that on different petitions by the father to have the child returned to him, "the case has been brought before the court in all about ten times and each time these petitions have been dismissed, except at the hearing held on July 27, 1921, when the child was discharged from the custody of the [society] and given into the care of its stepmother." For some reason not appearing in the printed record, the stepmother did not receive the child. In November 1921, another petition for the discharge of the child seems to have been filed, when it developed that Haddock Memorial Home had never been notified of the order of July 27, 1921. The next step appears to have been on January 10, 1923, when an order was made—(the record does not show why)— revoking the order of July 27, 1921, awarding the child to the stepmother. In 1923, the father made two applications for the child and in 1924, he applied twice; these applications were refused, though the record does not indicate why. Finally came the re-hearing which resulted in the order appealed from.

The trial judge states that he had grave doubt whether the record justified keeping this child from the father's home, but in the opinion filed, he gave the following reason for doing so: "Since there has been no change in the circumstances or situation in this case, and since one judge in this court has no right to entertain appeals from another judge's decision in this court, this petition must be dismissed."

We cannot determine whether there has been any change in circumstances because the record contains no evidence as to what the circumstances were on former hearings; but as this was a re-hearing the case was not an appeal from one judge to another but a hearing to determine the case on the merits, and that did not require showing any change in circumstances.

The power of the state over the relation of parent and child is not absolute, but limited: Ex parte Crouse, 4 Whart. 9; Mansfield's case, 22 Pa. Super. Ct. 224 (holding the first juvenile court act unconstitutional).

The act of 1903, supra, provides "......for the purpose of this act the words 'dependent child' and 'neglected child' shall mean any child [under 16 years of age] who is destitute, homeless, abandoned or dependent upon the public for support, or who has not proper parental care or guardianship.''

There is no evidence in the printed record to justify withholding this child, now past the age of eight years, from the family of her father, stepmother, brothers and sister. We are impressed by the evidence of the witness, Mrs. Jackson, who testified that she was familiar with the conditions of the Henlein home for the last year and a half as a result of her interest in the oldest boy; she said, "I found this home very clean"; the father "does everything to bring his children up right, just as my boys at home. I have come in contact with the stepmother and I found her to be very devoted to the children and they love her dearly.'' She spoke of Henlein's oldest daughter Elizabeth (now 16 years old) in terms of praise. This daughter Elizabeth testified, on behalf of her home and her wish to have her sister with her. Henlein and his wife testified at length and nothing was elicited by cross-examination in the slightest degree indicating any unfitness to bring up their daughter; there is no complaint of the way they care for the other four children. A number of witnesses testified that the home was clean and that the children were well cared for. Indeed, the trial judge himself said: "......the home of this man is a reasonably good home for a man of his station [he earns $36 to $40 a week]. The fact that it does not have all modern advantages does not

determine it to be unfit.  Lack of modern plumbing may be taken care of but it is clean in other particulars and you have no testimony in this case which says other than that it is reasonably clean.''

Opposed to the return of the child were the superintendent of the Haddock Home and persons apparently interested in the Home.  Ordinarily, it seems, this Home retains children only until they become four years of age, but an exception was made in the case of this child.  Their position seemed to be that as the child had spent all her life in a better environment,— as they say—than that in which the other Henlein children were reared, she should not be taken out of it; some testified that she was ''not a healthy child,'' though in what respect, does not appear, as she seemed to have recovered from the colds and mastoiditis with which they said she once suffered.  The testimony of these witnesses leaves no doubt that they are moved by strong feeling, but they state no relevant facts that would inform a court on the subject; ''she has a very warm place in our hearts,'' one says; the superintendent said, ''she had a hold on my heart strings that it would be difficult to break''; and ''we take her when we can, that is our fight, that is my fight.''  This witness condemns the father for not paying more attention to the child in the Home; if we assume that he was remiss in this respect, we are nevertheless confronted with the fact that he was constantly knocking at the door of the court below with petition after petition asking that his daughter be permitted to return to his family.

From the foregoing, it is clear that she is not now a dependent child within the meaning of the statute, and dependence is at the bottom of his proceeding; ''proper parental care and guardianship'' appear available.  Section 4 of the statute provides that ''the court shall determine, after an inquiry into the facts,

what order for the commitment and custody and care of the child, the child's own good and the best interests of the state may require......" That does not invest the court with arbitrary power; on the contrary, the court must proceed according to law. The trial judge realized this, and our reading of what he said, gives the impression that he would doubtless have held in accordance with the order we are about to make, if he had not considered himself bound to repeat the order made by his colleagues in earlier proceedings in the case.

The order appealed from is reversed and the record is remitted with instructions to enter an order whereby the petitioner, or his wife or any of the petitioner's children shall have the right any time during the day, or after petitioner's working hours, to visit Sophie Henlein at the Haddock Memorial Home over a period of 30 days next ensuing from the date of the order, and that from and after the expiration of that period she shall be returned to the custody of petitioner, with leave to take her sooner, if she desires to leave the Home sooner.