GIBSON, In re.

Juvenile Court, Huron County.

For further history see *Omnibus Index* in bound volume.

YOUNG, J. In this matter a complaint was filed by Calvin C. Fillings, Chief of Police, Willard, Ohio, alleging that John Hoadly Gibson, age 16 years on May 5, 1960, was a juvenile traffic offender in that

"he did unlawfully operate a certain motor vehicle, to-wit: a 1956 Plymouth, bearing Ohio license XR 923, over and upon the streets of the City of Willard, Ohio, to-wit: Myrtle Avenue, on the 18th day of December, 1960, at about 4:52 o'clock P. M., to-wit: he did fail to yield the right of way to an emergency vehicle, and: he did make an improper left-hand turn at the intersection of South Street and Myrtle Avenue, this being contrary to and in violation of sections 36 (a) of the Traffic Code Laws of the Village of Willard, Ohio, and in violation of Sections 4511.45 and 2151.021, Revised Code * * *"

The matter was heard on December 15, 1960. There was no dispute as to the facts of the matter.

It appears that at the time and place in question, John was going south on Myrtle Avenue. At that location, Myrtle Avenue is a boulevard, having a median strip about fourteen feet wide, with roadways on either side about sixteen feet wide. There are no curbs, but level berms on each side of the pavement. The pavement is not wide enough for two cars to drive abreast, and no lanes are marked. John was approaching the intersection of Myrtle Avenue and South Street, which dead-ends into Myrtle Avenue from the west. It was his intention to turn around at that point and go north on Myrtle Avenue to his home, which is a short distance north of the intersection.

Behind John, proceeding in the same direction, and quite

close to him, was a van-type truck, which totally obscured his vision to the rear. At a point about one hundred or one-hundred and twenty-five feet north of the intersection, John turned his signal which flashed a left turn, and started to reduce his speed. As he neared the intersection, he pulled his car toward the right hand edge of the pavement.

In order to make a U-turn at this point, the person turning must start at the right hand edge of the pavement, or the car will run off the paved surface of the road at the end of the turn, with the risk of getting stuck, or bumping into a fire hydrant located on the north-east corner of the intersection.

As John was approaching the intersection, a police car, which had received an emergency call to go to the scene of a traffic accident, was also proceeding south on Myrtle Avenue, with siren sounding, and red light flashing. The police car was going about forty miles per hour.

As the police car overtook the truck and automobile, the driver of the truck pulled over to the right. The police car was driving along the left edge of the road. When the police car reached a point where John's automobile was visible, the officers observed John's car pulling to the right. The police car continued to advance, without slacking speed. John then started to turn left, and when his car was at an angle, and about in the center of the paved portion of the roadway, it was struck by the police car, which veered off to the left and struck a tree.

Section 4511.45, Revised Code, provides in part as follows:

"Upon the approach of an emergency vehicle equipped with at least one flashing red light visible under normal conditions from a distance of five hundred feet to the front of such vehicle and the driver is giving audible signal by siren, exhaust whistle, or bell, the driver of every other vehicle shall yield the right of way, immediately drive to a position parallel to, and as close as possible to, the edge or curb of the highway clear of any intersection, and stop and remain in such position until the emergency vehicle has passed, * * *"

Section 36 (a) of the Traffic Laws of the City of Willard, is substantially the same as Section 4511.39, Revised Code. The ordinance reads as follows:

"(a) No person shall turn a vehicle from a direct course

upon a highway unless and until such person shall have exercised due care to ascertain that such movement can be made with reasonable safety to other users of the highway and then only * * * after giving an appropriate signal in the event any traffic may be affected by such movement.''

It should also be noted that Section 4511.36 (c), Revised Code, provides that

''At any intersection where traffic is restricted to one direction or one or more of the roadways, the driver of a vehicle intending to turn left at any such intersection shall approach the intersection in the extreme left lane lawfully available to traffic moving in the direction of travel of such vehicle * * *.''

With respect to the alleged violation of Section 4511.45, Revised Code, the Court has examined the authorities. There are quite a number of cases and some text articles dealing with alleged violations of this section, but all involve civil actions for damages, and most of them involve situations where the emergency vehicle, proceeding through an intersection against a traffic signal, collided with a vehicle proceeding through the intersection with the signal.

In general, the rule seems to be that under those circumstances, before the driver of the other vehicle can be charged with negligence for violation of the statute, it must be shown that he either saw or heard the red light or siren. The Supreme Court has held that

''A driver of an automobile is not negligent in failing to heed the siren or flasher signals on a police car or an emergency run where there is no evidence tending to prove that he heard the siren or saw the signal and no evidence will support a reasonable conclusion that he should, in the exercise of ordinary care, have heard or seen them.'' *Parton* v. *Weilnau, Admx.*, 169 Ohio St., 145 (Syl. 2).

In the *Parton case*, the driver had his car windows closed. In a similar case, where the driver had his windows closed and his radio playing, the Supreme Court of Washington affirmed a finding that the driver was not negligent. *City of Seattle* v. *Lough*, 45 Wash. 2nd., 286, 273 P. 2nd., 984. In the case of *McEwen Funeral Service* v. *Charlotte City Coach Lines*, 248 N. C., 146, 102 S. E. 2nd., 816, the court, considering a statute practically identical with the Ohio statute, says,

"The audible sound which the statute, Section 20-156(b), GS, requires is such sound as was in fact heard and comprehended, or should have been heard and its meaning understood, by a reasonably prudent operator called upon to yield the right of way."

In all cases in which the operator has been held negligent for violation of that statute in spite of his testimony that he did not hear the siren, the evidence has clearly shown that other persons in the same vehicle, or nearby vehicles, heard it, and there were no such circumstances as closed windows or playing radios to justify his failure to hear.

As already pointed out, these are civil cases. However, the law is now established beyond question that proceedings in the juvenile court are civil, and not criminal. A most comprehensive discussion of this subject appears in the recent case of *Pee* v. *U. S.*, 274 F. 2nd., 556. In the case of *State* v. *Shardell*, 107 Ohio App., 338, 79 Ohio Law Abs., 534, 8 Ohio Opinions (2nd), 262, 153 N. E. 2nd., 510, it is held that proceedings in a juvenile court are civil in nature, and a mere preponderance of the evidence is sufficient to warrant a determination that a minor is delinquent, even though such a finding involves a finding that a criminal statute has been violated by such minor.

It therefore seems that unless this court is prepared to hold that a reasonably prudent driver would not have his car windows closed, and have a car radio and a noisy heater operating, it must conclude that John was not in violation of Section 4511.45, Revised Code. Despite strong personal opposition to the operation of automobile radios, this court cannot go to the extent of holding that a reasonably prudent person would not use one, but finds that the evidence does not show that John was in violation of this statute at the time and place in question.

A more difficult problem is presented by the question of the violation of Section 36(a) of the ordinances. In the case of *Eisenhuth* v. *Moneyhon*, 161 Ohio St., 367, our Supreme Court has held that the provision of the statute that a person shall not turn a vehicle from a direct course upon the highway unless and until such person shall have exercised due care to ascertain that such movement can be made with reasonable safety to other users of the highway was not a specific requirement, but a mere rule of conduct.

In a case almost identical with the present one upon the facts, the Supreme Court of Michigan reversed a finding of a trial court that a driver in John's situation was guilty of negligence as a matter of law. *Hoffman* v. *Burkhead*, 90 N. W. 2nd., 498. However, this court sits both as trier of the fact and trier of the law, and the only effect of the Michigan Supreme Court's holding was to require that the evidence be submitted to the triers of the fact, and not resolved as a matter upon which reasonable minds could not differ as to the facts.

It is very difficult in such a case as the present one to bear in mind that the question to be resolved is not, "Who was responsible for the collision?", but, "Did the driver of the automobile violate the ordinance?". In resolving that question, it must be recalled that the ordinance enjoins upon the person who is turning the duty of exercising due care to ascertain that such movement can be made with reasonable safety to other users of the highway.

When the facts are examined in this light, it becomes apparent that upon the whole of the situation, John was much more concerned with his own personal convenience than he was with the laws and rules which have been designed for the safety of persons using the highway. His convenience dictated that to go to his home, he should make a U-turn at a point where the highway was barely wide enough to permit it to be made in one movement. The general rule, both of common care and prudence, and by statute, is that left turns at intersections should be made from the extreme left position that the one turning may lawfully occupy. Had John been following this rule, admittedly he could not have made his U-turn in one grand sweep. On the other hand, he would have been in a position where he could have, and would have, seen the approaching emergency vehicle, which by his own actions, again designed for his personal pleasure, he had deafened himself to, in ample time to have complied with the statute which required him to yield it the right of way.

Conceding, for the purpose of argument, that John was on a one lane roadway, and therefore was in the extreme left-hand lane lawfully available, yet, regardless of the signal he was giving, he started his turn by turning right instead of turning

left, a maneuver which is not sanctioned by any provision of the traffic codes, nor by prudent judgment. This court has previously found a child in violation of the traffic law for signalling a right turn, and then swinging to the left because it was her intention to enter a very narrow driveway. What is sauce for the goose should certainly be sauce for the gander.

Unhappily, there is still too great a tendency to regard traffic laws as being different from other laws, in that they need not be obeyed if it is more convenient to disregard them, so long as one does not get caught at it. No one realizes the fallacy of such thinking more clearly than the judge who is required to consider charges of violation of the traffic laws. Careful observance of the traffic laws at all times and places, no matter how personally inconvenient it may seem, is the only alternative to a bloody chaos that is horrifying to contemplate.

The function of the juvenile court is not to punish, but to reform. Long before the first such court was created, this object was embodied in the law. See for example the case of *Ex Parte Crouse*, 4 Whart., 9, decided in 1839. Admittedly, it is difficult almost to the point of impossiblity to reform a youth who does not understand and concede that he has done wrong. A. B. A. Journal, Vol. 46, P. 1209 (November, 1960).

For this reason, this court most reluctantly makes findings of violation of law when violation is denied, as here. However, it would seem better at least to try a reform even when the chances are not good, than to fail to find that the law had been violated when the facts so indicate, and thus weaken the whole structure of the law.

The court therefore finds that at the time and place in question John's conduct was not that of an ordinary prudent person of his age and experience, and was therefore in violation of the ordinance.

An order will be made accordingly.