CITY OF DAYTON *v.* EDISS.

[Cite as Dayton v. Ediss (1970), 25 Ohio Misc. 91.]

(No. B 744440—Decided May 26, 1970.)

Dayton Municipal Court, Traffic Division.

*Messrs. Jacobson, Durst, Pollack & Jacobson,* for defendant.

RICE, J.

I. *FACTS*

The defendant is charged with a violation of R. C. 4511.45 in that he failed to yield the right of way to an emergency vehicle, a fire department ambulance, at the corner of 6th and Main streets, at approximately 10:15 a. m. on Thursday, November 20, 1969.

The affidavit indicated that the defendant was proceeding, on a green light westwardly on 6th Street, when, at the corner of 6th and Main, he was involved in a collision with a fire department ambulance which was heading in a southerly direction on South Main Street. The ambulance driver testified that, for at least a block prior to entering the intersection of 6th and Main, he was using (1) the vehicle emergency lights, (2) a vehicle flashing red light, (3) continuous sirens, and (4) a yelper. He testified that

he slowed and looked both ways as he approached the intersection in question, observed that the light was red, and since he saw nothing coming he entered the intersection where the accident occurred.

One Bill Lahey, a fireman, testified he was in the ambulance at the time of the accident, and while not actually seeing the accident, was able to testify to hearing and seeing all the ambulance's emergency equipment, to-wit: sirens, lights, flashers, yelpers, etc.

One Adkins testified that he was driving a laundry van and was, at the time of the accident, stopped heading in an easterly direction on 6th street, at the corner of 6th and Main. He stated that he observed the collision and that he had followed the ambulance from the corner of 5th and Main (a block from the crash site) and that he saw the lights and heard the siren from the intersection of 5th and Main all the way up to the site of the collision.

John Halley, a construction worker who, at the time of the collision, was working under the 6th and Main streets overpass, stated that he was looking up Main Street at the time of the accident and saw the ambulance lights and heard the siren at least a block away. He stated further that he saw the driver slow down and look both ways as he entered the intersection of 6th and Main streets, immediately prior to the collision.

The defendant, for his part, testified that he was proceeding westwardly on 6th Street, and that, since it was a cold day, his windows were shut and his car heater was turned on. He testified further that his car radio was playing. He testified to the existence of a parking lot at the northeast corner of 6th and Main streets, which was normally (and he feels this condition existed on the day of the accident) crowded with cars, thus partially obscuring the vision at the intersection. This testimony with reference to the parking lot was verified by most of the other witnesses. The defendant testified further that the light was green for traffic proceeding on 6th Street and that he was proceeding, at a normal speed, through the intersection of 6th and Main when the collision occurred. The defendant stat-

ed further that he never saw the ambulance or heard its siren until a split second before the collision.

## II. *ISSUES*

The question in the case at bar thus becomes whether the defendant can be held liable under R. C. 4511.45 when he claims that due to driving with the windows closed, the heater and car radio on, and proceeding on a green light through an intersection, the view of which was partially obstructed by a crowded parking lot, that he neither saw nor heard the emergency vehicle with which he collided, when the evidence overwhelmingly preponderates that the emergency vehicle was proceeding properly in its emergency run and that its emergency equipment (flasher, yelpers, light and sirens) was operating for at least a block prior to the collision, and that the emergency vehicle slowed and its driver looked both ways prior to proceeding into the intersection in question, and that said emergency vehicle complied with all traffic regulations with reference to speed, etc.

Or, more succinctly, is the defendant not guilty of failure to yield the right of way to an emergency vehicle because he did not see or hear same, in spite of the fact that the emergency vehicle was properly proceeding in its emergency run and that its warning signals were operating audibly and visibly to the others in the area.

## III. *LAW*

The two leading cases in Ohio, both of which appear to be exactly on point, are *In re Gibson*, 85 Ohio Law Abs. 314 and *Parton* v. *Weilnau, Admx.*, 169 Ohio St. 145.

In the *Gibson case,* the court held that "to establish a violation of R. C. 4511.45, relating to yielding the right of way to an emergency vehicle, it must be established that the accused either saw the red light on such vehicle or heard its siren." The court in the *Gibson case* did extensive research on the subject of emergency vehicles proceeding through an intersection against a red signal and colliding with a vehicle proceeding through the intersection on a proper signal. The court concluded that in all cases where the operator has been held negligent for the violation of

that statute (R. C. 4511.45), in spite of his testimony that he did not hear the siren, the evidence has clearly shown that other persons in the same vehicle, or nearby the vehicle heard it, and that there were no such circumstances as closed windows or the playing of car radios to justify his failure to hear it. The analogy with the facts of the instant case is exact. In the case at bar, the defendant's testimony that, although others heard the siren and saw the flasher, he did not because of closed windows, and operating car heater and radio and partially obstructed vision of the intersection due to the crowded parking lot, appear to excuse under the *Gibson* rationale, his failure to hear or see the approaching emergency vehicle.

In the *Parton case, supra,* the court held that a driver of an automobile is not negligent in failing to heed the siren or flasher signals on a police car on an emergency run where there is no evidence tending to prove that he heard the siren or saw the signals and no evidence that will support a reasonable conclusion that he should, in the exercise of ordinary care, have seen or heard them. In determining exactly what evidence will constitute a reasonable conclusion that he should, in the exercise of ordinary care, have seen or heard the vehicle, the Court notes that in the *Parton case,* the driver had his windows closed (as in the instant case), thus, in the court's opinion, excusing his nonseeing or nonhearing the siren or flasher. As a further indication of what the court feels would excuse a defendant's nonhearing or nonviewing of an emergency vehicle, the court cites the case of *City of Seattle* v. *Lough,* 45 Wash. 2d, 296, in which the driver had his windows closed and his car radio playing. The parallel between these cases and the instant case is self-evident. Although 4 witnesses testified to seeing or hearing the flasher or siren from at least a block away, all these witnesses were either in the ambulance or facing the vehicle in a direct line in such a way that any flasher would be visible or siren audible for quite a distance. This is in contrast to the defendant's position, driving with the windows closed, the radio and car heater operating and, coming from an angle to the

emergency vehicle, where the sound and site of the emergency signals could not have easily permeated.

The state makes a point of emphasizing that all the cases cited by the defendant are either civil or quasi-civil in nature. Yet, certainly, if defendants in the cited cases are held nonliable under the less exacting burden of proof required in a civil case, certainly they cannot be held liable in a traffic case under the far more·exacting standards of proof beyond a reasonable doubt.

The defendant is not guilty as charged.

*Judgment for defendant.*