CITY OF MOUNT VERNON, APPELLEE, *v.* HOLTON, APPELLANT.

(No. 87-CA-05 — Decided August 13, 1987.)

*Cynthia D. Barbour,* assistant city law director, for appellee.

*T. Garrett Ressing,* for appellant.

MILLIGAN, J. Appellant Thomas L. Holton was driving a pickup truck in the city of Mount Vernon on December 24, 1986. At 12:28 p.m., he approached the intersection of West Vine and Mulberry Streets. Holton was driving alone southbound on Mulberry at fifteen to twenty m.p.h. and "had" a green light in his favor when he was struck at the "right-hand rear tire" by an emergency squad ambulance of the Mount Vernon Fire Department. The emergency vehicle was proceeding east on Vine en route to an accident and properly emitting visual and audible emergency signals.

Appellant was driving with windows up (the temperature was thirty-five degrees), heater on, and radio operating. The view appellant had looking toward Vine Street (from whence the ambulance approached) was partially blocked by traffic and other objects.

The emergency vehicle driver, Farson, passed one motorist who had stopped in front of him, then decided he "had" the intersection and proceeded through it, striking appellant.

There was no evidence offered on the part of the state of Ohio that Holton heard or saw the ambulance itself approaching the intersection from the right. Holton himself testified that he saw only the ambulance's oscillating lights when the lights were "ten feet" away.

Appellant Holton neither drove to the right curb nor stopped his vehicle. In fact, he remained in the inside, middle lane.

Holton was cited under Section 331.21 of the codified ordinances of the city of Mount Vernon, a mirror image of R.C. 4511.45:

"Upon the approach of a public safety vehicle, equipped with at least one flashing, rotating or oscillating light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle and the driver is giving audible signal by siren, exhaust whistle, or bell, the driver of every other vehicle shall yield the right of way, immediately drive to a position parallel to, and as close as possible to, the right edge or curb of the highway clear of any intersection, and stop and remain in such position until the public safety vehicle has passed, except when otherwise directed by a police officer.

"* * *

"This section does not relieve the driver of a public safety vehicle from the duty to drive with due regard to the safety of all persons and property upon the highway."

Also germane is R.C. 4511.03 which states:

"The driver of any emergency vehicle or public safety vehicle, when responding to an emergency call, upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety to traffic, but may proceed cautiously past such red or stop sign or signal with due regard for the safety of all persons using the street or highway."

R.C. 4511.03 parallels Section 331.20 of the codified ordinances.

In a bench trial before the Municipal Court of Mount Vernon, the court found appellant guilty of violating Section 331.21. Holton appeals, claiming one assignment of error:

"The trial court erred in finding the appellant guilty of failing to yield to an emergency vehicle."

This case comes to us upon essentially undisputed facts, which Farson, the ambulance driver, testified to at

trial: "He (Holton) said he didn't see me and I told him I didn't see him."

An operator of a motor vehicle has a duty, at all times, to use his perceptive senses to see, hear, and effectively respond to an emergency vehicle approaching with flashing lights and audible siren.

In this case, the evidence that appellant was operating his vehicle with closed windows, heater on, and radio operating allows the factfinder to conclude that the appellant had voluntarily disabled himself from the effective perception by sight and sound, most particularly sound, of the approaching emergency vehicle.

Appellant's argument is untenable:

"JUDGE: Well basically, you're saying exactly what I have said; he's under no obligation to yield if he has the windows rolled up, the radio playing, and isn't looking. That's what you're saying; isn't it?

"DEFENSE COUNSEL: I'm saying that he has to be aware of the emergency vehicle in order to be convicted of this section.

"JUDGE: And if he chooses to roll his windows up and play his radio loud and not look, then he's not aware he's, he skates; is that what you're saying?

"DEFENSE COUNSEL: Yes.

"JUDGE: Okay."

The finding of guilt is supported by credible evidence.

(By like token, the evidence may well also have supported a charge of violation of R.C. 4511.03 with respect to the driver of the emergency vehicle.)

R.C. 4511.45 imposes upon the driver several disjunctive responsibilities, only one of which is to yield the right of way. Other duties are to "immediately drive to a position parallel to, and as close as possible to, the right edge or curb of the highway clear of any intersection." Another is to "stop and remain in such position until the public safety vehicle has passed * * *." Thus, even if the emergency vehicle operator forfeits his "right of way" by failure to exercise due regard, the other driver is not relieved from his responsibility to look and listen effectively and to pull to the curb and stop.

We read R.C. 4511.45 to allow the possibility that the citizen-driver may be guilty of violation of his statutory duties with respect to an emergency vehicle, while at the same time, the emergency vehicle driver, "not relieve[d]" of the duty to drive with due regard, may also be guilty of a traffic offense.

*Dayton* v. *Ediss* (1970), 25 Ohio Misc. 91, 54 O.O. 2d 45, 265 N.E. 2d 834 (Dayton M.C.), is distinguishable. There, the analysis leading to acquittal, in a case where the facts were remarkably similar to those in the case *sub judice,* centered solely upon the question of "right of way" and forfeiture thereof.

Appellant's sole assigned error is overruled and the judgment of the Municipal Court of Mount Vernon is affirmed.

*Judgment affirmed.*

PUTMAN, P.J., concurs.

HOFFMAN, J., dissents.

HOFFMAN, J., dissenting. In dissenting from the majority's opinion, I take exception at the threshold to the statement that, "Appellant Holton neither drove to the right curb nor stopped his vehicle. In fact, he remained in the inside, middle lane."

Holton never had the chance or opportunity to respond *in any way* to the approaching ambulance and this is borne out conclusively by the record. As stated by the majority, Holton never heard the ambulance or saw the ambulance itself, nor did the state pre-

sent *any* evidence proving he either heard or saw the ambulance.

Furthermore, Holton's testimony substantiated by both the ambulance driver, Farson, and his paramedic passenger, Cantrell, established that Holton was given all of "one second" to respond before being "blind-sided" by the ambulance:

"A. * * * And in just a matter of a second, it just smashed into the side of my truck.

"Q. Okay. Did you hear the siren before, before that at all?

"A. No; *I did — did not hear the siren or I didn't see the lights prior to getting in the intersection,* and when I got in the middle of the intersection, I just saw out the corner of my eye, the lights right before they hit me." (Emphasis added.)

Of course, an operator of a motor vehicle has a duty to use his senses of sight and hearing to respond to an emergency vehicle, but that same driver must be provided with a reasonable opportunity to do so. Expecting a citizen-driver who is operating his vehicle in a safe and careful manner to "yield the right of way, immediately drive to a position parallel to, and as close as possible to, the right edge or curb of the highway clear of any intersection, and stop and remain in such position until a public safety vehicle has passed," all in the space of one second, when he had only seen lights out of the corner of his eye, defies reason, logic and common sense.

According to R.C. 2901.04(A), the following rule applies:

"Sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."

Also, the rule applies with equal force to criminal ordinances, to wit:

"The statutory rule of construction in R.C. 2901.04(A) that criminal statutes must be strictly construed against the state and liberally construed in favor of the accused is applicable to the interpretation of criminal ordinances as well." *Vermilion* v. *Stevenson* (1982), 7 Ohio App. 3d 170, 7 OBR 215, 454 N.E. 2d 965, paragraph one of the syllabus.

In the case *sub judice,* the majority is construing R.C. 4511.45 strictly against appellant Holton and liberally in favor of the state.

If the above were not enough to enable this court to reverse the instant conviction, then the clear syllabus of *Dayton* v. *Ediss* (1970), 25 Ohio Misc. 91, 54 O.O. 2d 45, 265 N.E. 2d 834, should cause a reversal. The syllabus reads as follows:

"A motorist is not guilty of failing to yield the right of way to an emergency vehicle in violation of R.C. 4511.45 where he is proceeding on a green light at a normal speed through a street intersection with the car windows shut and the car heater and radio operating and the view partially obstructed by a crowded parking lot, and he did not see the emergency vehicle or hear its siren *until a split second before the collision,* although witnesses testified that they saw the flasher and heard the siren from a block away." (Emphasis added.)

Appellee failed completely to distinguish the clear holding of *Dayton* in its brief to us and, in my eyes, the majority also fails to distinguish *Dayton.* The sole question in the instant case is whether Holton should have yielded the right of way as was the precise question in *Dayton. Dayton* is squarely on the side of appellant in the case *sub judice.*

I am further perplexed as to how Holton was supposed to observe R.C. 4511.45 when that provision demands that the motorist "yield the right of way, immediately drive to a position parallel to, and as close as possible to,

the right edge or curb of the highway *clear of any intersection * * *.*" (Emphasis added.)

As Holton was struck in the middle of an intersection, in the right rear of his vehicle as stated by the majority, said blow disabling both Holton and his vehicle, it was physically impossible for him to exit the intersection, then accomplish the requirements of yielding, pulling over, etc.

I further dissent from the majority's statement (according to the trial judge) that the radio was being played loud. The only testimony regarding the sound level of the radio (actually a tape player) came from Holton who described it as "just average."

Although I agree completely with the majority herein that the Mount Vernon ambulance driver "forfeited his right of way" by his inattentive driving (Farson admitted that he did not see the traffic signal, nor obviously did he see Holton driving through the intersection), I would reverse Holton's conviction herein solely and exclusively on the ground that he, by the undisputed evidence, did not violate the instant ordinance. A finding of guilty herein is against the evidence presented to the municiple court, and, particularly when R.C. 2901.04 is observed, was and is contrary to law.

The trial court's finding of guilty as affirmed by this court should be reversed and defendant-appellant Holton should be discharged.